## F. P. GREENE v. FIRST NATIONAL BANK OF THIEF RIVER FALLS.[1]

July 29, 1927.

No. 26,148.

**A national bank, in selling a real estate mortgage, has no authority to agree to repurchase it.**

1. Under the act of congress providing for the organization and defining the powers of national banking associations, a national bank, in selling a real estate mortgage held by the bank, has no authority to enter into a contract for the repurchase of the mortgage.

**No estoppel against bank's setting up its defense.**

2. Although the bank has received the benefits of such a contract, it is not estopped, when sued thereon, from setting up as a defense the want of authority to make the contract.

Banks and Banking, 7 C. J. p. 758 n. 65, 67; p. 760 n. 98; p. 807 n. 24; p. 833 n. 80; p. 834 n. 81.

Defendant appealed from a judgment of the district court for Pennington county, Grindeland, J. Reversed.

*Theodore Quale, Fowler, Carlson, Furber & Johnson,* and *Ralph H. Comaford,* for appellant.

*W. E. Rowe, Perl W. Mabey,* and *H. O. Chommie,* for respondent.

LEES, C.

This action is founded on alleged contracts made by the defendant's president when he sold certain real estate mortgages to the plaintiff.

The complaint alleges that defendant agreed to repurchase the mortgages whenever plaintiff requested defendant to take them off his hands. The answer was a general denial. The jury returned a verdict in plaintiff's favor. The defendant moved for judgment

[1]Reported in 215 N. W. 213.

notwithstanding the verdict. The motion was denied, and from the judgment subsequently entered this appeal is prosecuted.

[1] The defendant is a national bank. The authority of such banks is derived from the act of congress under which they are organized, it being established law that they are instrumentalities of the federal government, created for a public purpose, are necessarily subject to the paramount authority of the United States, and that congress is the judge of the extent of the powers which should be conferred on them and has the sole power to regulate and control them. Davis v. Elmira Sav. Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. ed. 700; Easton v. Iowa, 188 U. S. 220, 23 S. Ct. 288, 47 L. ed. 452; State v. Clement Nat. Bank, 84 Vt. 167, 78 A. 944, Ann. Cas. 1912D, 22.

The act of congress defining the powers of national banks provides:

"That in addition to the powers now vested by law in national banking associations organized under the laws of the United States any such association located and doing business in any place the population of which does not exceed five thousand inhabitants, as shown by the last preceding decennial census, may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, * * * act as the broker or agent for others in making or procuring loans on real estate located within one hundred miles of the place in which said bank may be located, receiving for such services a reasonable fee or commission: Provided, however, That no such bank shall *in any case* guarantee either the principal or interest of any such loans." 39 U. S. St. c. 461, p. 753.

In the case at bar the defendant did not act as a broker or agent. It made the loans for itself and they became part of its assets. In selling the mortgages defendant dealt with its own property. Nevertheless we think that defendant was prohibited by the act from guaranteeing payment of the principal or interest of the loans. The words italicized indicate that it was the policy of congress to prohibit national banks from guaranteeing notes secured by real

estate mortgages in any case whatever. If we are right in this conclusion, the bank had no authority to enter into contracts for the repurchase of such notes and mortgages, for the objections to such contracts are even greater than to those of one of guaranty.

In Picha v. Central Met. Bank. 161 Minn. 211, 201 N. W. 315, 203 N. W. 617, it was sought to charge a state bank with liability for the fraudulent representation of its assistant cashier to the effect that plaintiff could at any time return mortgages purchased from the bank and receive the amount due on them. It was held that the bank was bound by the representation of its officer whom it had clothed with apparent or ostensible authority to sell its mortgages in such a way as to make it liable as a party to the contract of sale.

In Eberlein v. Stockyards Mtg. & Tr. Co. 164 Minn. 323, 204 N. W. 961, it was held that an officer of a trust company, having express authority to buy and sell securities, has no implied power in selling such securities to bind the company by a contract to repurchase them on demand, and the dangers attending the exercise of such authority by officers of trust companies and banks were pointedly referred to.

Farmers & Mech. Sav. Bank v. Crookston State Bank, 169 Minn. 249, 210 N. W. 998, involved a guaranty of loans made by a state bank as a broker and not on its own account. It was held that such a guaranty was ultra vires, although a state bank may guarantee its own paper upon making a sale thereof.

None of our decisions is directly applicable to the question we are now considering, for the defendant is not organized under the laws of this state.

In Peoples Bank v. National Bank, 101 U. S. 181, 25 L. ed. 907, it was held that a national bank, on transferring a promissory note, may guarantee it; that it is to be presumed that the vice-president had the power to make such a guaranty in the name of the bank and the bank is estopped to deny it; and that the retention by the bank constituted an acquiescence in such act as effectual as would have been the most formal authorization in advance or afterwards.

But a guaranty of commercial paper sold by a bank and a contract to repurchase real estate mortgages which the bank has sold stand on a different footing. As was said in Eberlein v. Stockyards Mtg. & Tr. Co. 164 Minn. 323, 204 N. W. 961, to agree to repurchase on demand and at face value securities the bank sells subjects it to a contingent liability, the sudden maturing of which, by the concurring demands of a large number of purchasers, may easily absorb its capital instantaneously. Paraphrasing the language of Farmers & Mech. Sav. Bank v. Crookston State Bank, 169 Minn. 249, 210 N. W. 998, it may be said that every bank is charged with duties to the public. A bank is more than a mere private corporation for pecuniary profit. A national bank is under the supervision of the federal authorities. A contract to repurchase real estate mortgages which the bank has sold is in defiance of safe banking, tends to injure the depositors of the bank, and is contrary to public policy.

The power to contract for the repurchase of a loan secured by a real estate mortgage is not expressly conferred by the national banking act. Neither is it incidental to those expressly conferred. California Nat. Bank v. Kennedy, 167 U. S. 362, 371, 17 S. Ct. 831, 42 L. ed. 198, is a case dealing with the acquisition by a national bank of stock in another corporation. It was held that such banks do not possess the power to deal in stocks and that an implied prohibition against such dealings resulted from the failure of congress to grant the power. That doctrine is applicable here. National banks are not expressly authorized to make such contracts as defendant is alleged to have made. The failure to grant the power negatives its existence, for the power is of such a nature that it is not to be inferred in the absence of language clearly indicating its existence.

For the foregoing reasons, we hold that even though the alleged contracts were made they cannot be enforced against the bank.

[2] We have not overlooked the argument that the defendant is estopped from asserting its lack of authority to make the alleged contracts. Conceding that plaintiff paid his money to defendant on

the faith of the contracts and that defendant has received and enjoyed the benefits thereof, nevertheless there is no estoppel, for it is firmly settled by the federal decisions that a contract made by a corporation beyond the scope of its powers, express or implied, on a proper construction of its charter, cannot be enforced or rendered enforceable by the application of the doctrine of estoppel. Thomas v. West Jersey R. Co. 101 U. S. 71, 25 L. ed. 950; Central Transp. Co. v. Pullman's P. C. Co. 139 U. S. 24, 11 S. Ct. 478, 35 L. ed. 55; Union Pac. Ry. Co. v. C. R. I. & P. Ry. Co. 163 U. S. 564, 581, 16 S. Ct. 1173, 41 L. ed. 265; California Nat. Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. ed. 198.

We feel bound to follow the rule of the federal courts in a case like this involving contracts made by a corporation deriving its powers from an act of congress and subject to the paramount authority of the United States. These views lead to the conclusion that the judgment is erroneous and must be reversed, and it is so ordered.