Aaron Freedman, Appellee, v. Madison & Kedzie State Bank, Appellant.

Gen. No. 34,645.

Heard in the first division of this court for the first district at the October term, 1930. Opinion filed January 26, 1931.

RYAN, CONDON & LIVINGSTON, for appellant; JAMES G. CONDON and JOHN J. SHARON, of counsel.

WILLIAM FELDMAN, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This is an appeal by defendant from a judgment in the sum of $5,300 entered upon the finding of the court. Plaintiff sued upon a written contract made February 3, 1928, whereby defendant sold to plaintiff certain real estate bonds of the par value of $5,000, for which plaintiff paid par value with accrued interest. The memorandum of sale stated:

"The Madison & Kedzie State Bank agrees to repurchase these bonds at any time at 99 and accrued

interest, or in three and one-half years without losing any discount.

F. W. Gleason, V. Pres."

The statement of claim alleges that on February 5, 1930, plaintiff made formal demand on defendant that it comply with the contract and tendered said bonds to it, but defendant refused to repurchase same.

The affidavit of merits denies that Gleason, who signed the contract, had authority to bind defendant; avers that defendant was a banking corporation organized under the laws of the State of Illinois, and that the agreement to repurchase the bonds was beyond its powers as authorized in said act. The affidavit further avers that the agreement was without consideration; denies the tender as alleged by plaintiff, and avers that the contract was void as a gambling contract.

Upon the trial plaintiff proved the execution of the contract, the purchase of the bonds, the tender of the same with a demand for repurchase, and the refusal of defendant to repurchase the same. Plaintiff also introduced in evidence a check to the order of defendant dated February 3, 1928, showing the payment upon that date of $5,084 to defendant for the bonds. Plaintiff also produced the bonds and offered them in evidence. The attorney for defendant objected, whereupon the following took place:

"Mr. Tuohy (attorney for defendant): We admit these are the bonds described in the statement of claim.

The Court: I think it is enough to produce the bonds and by agreement they are the bonds described in the statement of claim, without offering them in evidence and making them an exhibit.

Mr. Feldman (attorney for plaintiff): At this time, of course, I want to make a tender in open court; resume our tender.

Mr. Tuohy: Are you tendering them to me?

Mr. Feldman: Tendering them to you as agent of the defendant.

The Court: You are tendering the bonds and demanding the money?

Mr. Feldman: Absolutely.

Mr. Tuohy: We are in no position at this time to pay the money for these bonds. As I understand, the tender is made to me now as attorney for the defendant, conditional upon my ability, or defendant's ability, to pay?

Mr. Feldman: That is right.

Mr. Tuohy: And I wish to state for the purpose of the record, that we are not in such position at this time.''

At the close of plaintiff's evidence, defendant moved the court for a finding which was denied, and defendant then introduced in evidence the certificate of the Auditor of Public Accounts of the State of Illinois, in and by which he certified that defendant bank was authorized ''to commence business as a Bank or Banking Association, under the provisions of said act, for the purpose of discount and deposit, and to buy, and sell, exchange, and to do a general banking business, excepting the issuing of bills to circulate as money, and with power to loan money on personal and real security, and to accept and execute trusts.''

Propositions of fact and of law were submitted to the court, and at the request of plaintiff the court held as a matter of law that the instrument of purchase and repurchase constituted a simultaneous transaction; that a corporation, including banking institutions, could not receive the benefits of a contract without assuming the burdens contained therein; that when the defendant company sold the bonds and at the same time agreed in writing to repurchase the same at the face value, less one per cent discount, the

said contract of purchase and repurchase was within the scope of the corporate powers of the defendant company; that where a banking company has received the benefits of a written contract it must in natural sequence assume the burdens of the contract and cannot choose which part of the contract it will recognize.

The court refused to hold, as requested by defendant, that if plaintiff was entitled to recover at all the amount of recovery must be limited to nominal damages merely; that where there was a breach of contract on the part of a bank to repurchase from its customer bonds which it has sold to the customer, the measure of damages was not the amount at which said bank agreed to repurchase said bonds in the contract, nor was the measure of damages the amount paid for the bonds by the customer.

The court also refused to find as a proposition of law that the execution of the writing sued on was ultra vires defendant's charter powers, and it refused to find as a fact from the evidence that Gleason had no authority from defendant to enter into an agreement on behalf of defendant to repurchase the bonds sold to plaintiff.

The first contention of defendant is that it was without authority either express or implied to repurchase these bonds. That the bank assumed to give such authority in its behalf to Gleason is hardly contradicted upon the record, but defendant now contends that such authority was wholly outside the powers granted to it by the law of the State under the charter by which it was created.

Plaintiff concedes that a corporation for pecuniary profit has power to purchase its own bonds or shares of stock, and that such agreement is not ultra vires the powers of such corporation, as is so held in many cases by the courts of this State. A few of these are *Ward v. Johnson,* 95 Ill. 215; *Wolf v. Nat. Bank of Illinois,* 178 Ill. 85; *Stewart v. Dodson,* 282 Ill. 192; *Roush v.*

*Illinois Oil Co.,* 180 Ill. App. 346; *Hills v. Hopp,* 210 Ill. App. 365; *Massachusetts Bonding & Insurance Co. v. Phillips Co.,* 230 Ill. App. 38. These cases also in effect hold that a sale with an agreement to repurchase by the vendor is only a conditional rather than an absolute sale. Defendant contends, however, that such rule is inapplicable to a corporation of this State organized for banking purposes and cites *Wedesweiler v. Brundage,* 297 Ill. 228, where the distinction between banking corporations and others organized for pecuniary profit is pointed out. Defendant also cites and relies on a number of cases decided by the Supreme Court of Minnesota, most of which are easily distinguishable from the facts of this case, although the language of the opinions, it must be admitted, would seem to sustain defendant's contention. One of these cases is *Eberlein v. Stockyards Mortgage & Trust Co.,* 164 Minn. 323, 204 N. W. 961, where it was held that the secretary of the defendant company without express authority had no apparent implied power to bind the bank by an agreement to repurchase securities owned by the bank when selling the same. In *Farmers' & Mechanics' Sav. Bank v. Crookston State Bank,* 169 Minn. 249, an agreement of a bank to guaranty mortgage loans negotiated by it, other than its own, was held invalid. *Greene v. First Nat. Bank of Thief River Falls,* 172 Minn. 310, 215 N. W. 213, is a case where it was claimed that a national bank had agreed to repurchase certain notes and mortgages, and the decision of the court was based upon the construction of a statute of the United States defining and limiting the powers of a national bank. An examination of that opinion discloses that *Logan County Nat. Bank v. Townsend,* 139 U. S. 67, and *Thompson v. St. Nicholas Nat. Bank,* 146 U. S. 240, which seem to express a contrary view were not called to the attention of the court, and that the Supreme Court of Minnesota has not always adhered to the rule appears

from an examination of *Hunt v. Hauser Malting Co.,*
90 Minn. 282, and *Beyl v. Swanson,* 165 Minn. 278.

All these Minnesota cases, as well as cases from
other States, cited by defendant construe statutes
quite different from our own. Such, in particular, is
true of *Gause v. Commonwealth Trust Co.,* 196 N. Y.
134, 89 N. E. 476, a case upon which defendant seems
to place great reliance. Defendant concedes in its
brief that no case decided by the courts of this State
sustains the contention it now makes. On the other
hand, in *Wolf v. National Bank of Illinois,* 178 Ill.
85, our Supreme Court (reversing the Appellate Court
in the same case) held valid an agreement by a na-
tional bank for the sale of bonds of the Auditorium
Association on June 22, 1896, with an option of the
vendee to resell the bonds to the bank in January,
1897. The contention made in that case was that the
agreement was void as violating section 130 of the
Criminal Code, Cahill's St. ch. 38, ¶ 308, prohibiting
gambling contracts; but the Supreme Court said that
it was only a conditional sale with the right in the
vendee to return the bonds and that the transaction
was not unlawful. It is true, as defendant here points
out, that the precise question of ultra vires was not
raised in the briefs or considered in the opinion of
the court; but as the parties to that suit were repre-
sented by able counsel they would not have missed
the point had it been deemed available.

We are not cited to any statute which forbids ex-
pressly such contracts as was here made; and on the
plainest principles we think defendant is estopped to
set up that defense. Even if a statute expressly for-
bade it, there would remain the question of whether
it was the intention of the legislature, by the enact-
ment of the statute, to make such a contract wholly
void as contrary to public policy. It is not contended
by defendant that the power of selling and purchasing
bonds at a discount is wholly without the powers of

the defendant bank, and there is, of course, no claim that the transaction is one involving moral turpitude. Morse on Banks and Banking, 5th ed., secs. 735–740.

Defendant next contends that at any rate under the evidence only nominal damages should have been allowed. It is urged that the true measure of damages is the difference between the contract price at which defendant agreed to buy and the market value at the time of default of defendant in its agreement to repurchase. *Erickson v. Sherwood,* 171 Ill. App. 426; 35 Cyc. 592; 24 R. C. L. 116; 2 Sutherland on Damages, 4th ed., sec. 647, and many other authorities are cited which so hold in cases where plaintiff brings his suit upon that theory. Here, however, plaintiff not only tendered the bonds before beginning suit but also tendered them in court. A suit for such damages was not the only remedy of plaintiff. Even before the enactment of the Uniform Sales Act a plaintiff in such case had the option of making a tender and keeping it good and suing for the full agreed price of the thing sold. *Osgood v. Skinner,* 211 Ill. 229; *New York Hamilton Corp. v. First Illinois Co.,* 257 Ill. App. 125; *Santa Rosa-Vallejo Tanning Co. v. Kronauer & Co.,* 228 Ill. App. 236; Cahill's St. ch. 121a, ¶ 66; *Wallace Bank & Trust Co. v. First National Bank of Fairfield,* 40 Idaho 712, and see note to the same case in 50 A. L. R. 316, 325. Formal pleadings are not required in the municipal court. Of course the plaintiff holds these bonds for the defendant.

We find no reversible error in the record and the judgment of the trial court is therefore affirmed.

*Affirmed.*

McSurely and O'Connor, JJ., concur.