Leo Awotin, Appellant, v. Atlas Exchange National
Bank of Chicago, Appellee.

Gen. No. 35,391.

Heard in the second division of
this court for the first district at the October term, 1931.
Opinion filed February 23, 1932.

SHULMAN, SHULMAN & ABRAMS, for appellant; MEYER ABRAMS, of counsel.

ELBRIDGE W. RICE, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

In an action in assumpsit, tried before a jury in March, 1931, at the conclusion of plaintiff's evidence the court, on defendant's motion, directed the jury to return a verdict in defendant's favor. Such verdict was returned, and, on May 23, 1931, the court entered judgment against plaintiff for costs and he appealed.

Plaintiff's declaration consisted of a special count and the common counts. In the special count he alleged that on November 1, 1929, at Chicago, defendant offered to sell to him "$35,000 Dollars First National Company Collateral Trust, Series O, First Mortgage Real Estate 5½% Gold Bonds in denomination of $1,000 each, and then and there promised that, if plaintiff purchased the bonds and paid therefor the sum of $35,000, together with accrued interest thereon, it (defendant) would repurchase the bonds at maturity, paying therefor the par value of the bonds and accrued interest"; that plaintiff, in consideration thereof, on November 1, 1929, paid to defendant said sum and purchased the bonds from it; that to evidence the agreement defendant reduced the same to writing and, as an inducement to plaintiff to purchase the bonds, then and there delivered to plaintiff the following writing:

"Mr. Leo Awotin,                                    Nov. 1, 1929.
1920 S. Halsted St., Chicago.
Dear Sir:

"This is to acknowledge that we have this day sold you $35,000 par value First National Company, Collateral Trust, Series O, First Mortgage Real Estate 5½% gold bonds, in denomination of $1,000 each,

numbered as follows: #4584-4585 and 4612 to 4644, inclusive.

"Should you desire to resell these bonds to us, we hereby agree to repurchase same at maturity at par, or $35,000, and accrued interest.

"Yours very truly,
B. M. Blankenheim,
Cashier."

That the bonds matured on July 15, 1930; that on that day plaintiff presented them to defendant and demanded that it repurchase them and pay to plaintiff the sum of $35,000 and accrued interest; that defendant refused so to do; and that although plaintiff has made repeated demands on defendant since July 15, 1930, to the same effect, it has not repurchased the bonds or paid to him the $35,000 and accrued interest or any part thereof, but still refuses. To plaintiff's damage, etc.

In plaintiff's "affidavit of amount due," attached to the declaration, and dated September 4, 1930, it is stated that his demand "is for the sum of $37,085.41, due and owing to plaintiff from defendant *under its written agreement, dated November 1, 1929,* and that there is due from defendant after allowing to it all just credits, deductions and set-offs $37,085.41."

Defendant entered its appearance by attorney, demanded a jury trial, and filed a plea of the general issue. In the accompanying affidavit of merits of Daniel M. Healy he alleged that he is the president of defendant; that there is not owing to plaintiff any sum of money; and that "defendant did not enter into any agreement with plaintiff and never authorized or empowered anyone else to enter into the agreement alleged in the declaration or in the affidavit thereto attached." On the eve of the trial defendant, by leave of court, filed an additional plea alleging that it is a national bank, organized under the banking laws of the

United States, that "neither its charter nor the general law gives to defendant any power or authority whatever to guarantee payment of the indebtedness of any other person, firm or corporation, nor to repurchase bonds at maturity," and that the supposed guarantee or repurchase agreement of said Blankenheim, cashier, as set forth in the declaration, "is ultra vires and void." To this additional plea plaintiff filed a replication.

On the trial plaintiff testified that he is a physician and surgeon, practicing his profession in Chicago; that he had business relations with defendant bank from 1917 to 1929, inclusive; that he had kept a savings account with it; that on November 1, 1929, he purchased of it the 35 bonds in question; (bonds tendered by plaintiff to defendant, but by agreement not introduced in evidence); that in making the purchase he dealt with Mr. Blankenheim, cashier of the bank; that Rose Kimen, who was arranging for the purchase of other bonds of the same issue, was present at the time; that he paid for the 35 bonds and accrued interest, $35,036.46; that Blankenheim said at the time that "the price is 98, but that if I buy on the written contract the price is 98½—a half of 1% in excess of the market price, in consideration of the written contract"; that Blankenheim delivered to him with the 35 bonds the contract for repurchase (introduced in evidence; same as set out in the special count as above); that the bonds matured on July 15, 1930; that on that day he (the witness) "presented the bonds to Mr. Blankenheim, as cashier, for repurchase," but he "refused to repurchase them, and said that I would have to see Mr. Healy, president of the bank"; that about 10 days later he (the witness) saw Mr. Healy, who said to him in substance that the bonds were good, safe bonds, that he had originally purchased them for the bank for investment, that at present the First National Com-

pany were financially embarrassed and were unable to take up the bonds, but that he (the witness) "should not worry," although he would "have to wait a few months"; that thereupon he asked Healy why the defendant bank did not repurchase the bonds, according to the contract for repurchase; that Healy replied in substance that because of its lack of money, and its assets not being liquid, the bank was unable to do so, and that he did not then say anything about "the law not permitting the bank to perform the contract." Plaintiff further testified that although he made further demands of defendant, and had further conversations with Healy, "he never received any moneys on the bonds or any interest."

Plaintiff's testimony was corroborated in certain particulars by that of Rose Kimen, an employee of plaintiff, and who in November, 1929, had purchased of defendant $4,000 worth of other bonds of the same issue under a similar contract for repurchase. She further testified that she was present at one of the conversations had between plaintiff and Healy; that Healy suggested to plaintiff that the latter "trade his bonds for Chicago mortgages" and said that he would mail a list of such mortgages within a few days; but that such list never was received.

It was stipulated that the 35 bonds in question "were securities purchased as investment securities by the bank and were its property at the time they were sold to plaintiff." Thereupon, on defendant's motion, the court directed the jury to return a verdict in defendant's favor as first above mentioned.

In section 5136 of the U. S. Revised Statutes, relating to the powers, etc. of national banks, it is in part provided in subsection 7 (as amended February 25, 1927, by the addition of a proviso):

"To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such

incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title; *Provided,* That the business of buying and selling *investment securities* shall hereafter *be limited* to buying and selling *without recourse* marketable obligations evidencing indebtedness of any person, co-partnership, association, or corporation, in the form of bonds, notes and/or debentures, commonly known as investment securities, under such further definition of the term 'investment securities' as may by regulation be prescribed by the Comptroller of the Currency, . . .''

Counsel for the bank contended in the trial court and contends here that under the above statute no recovery can be had by plaintiff in the present action because the agreement of November 1, 1929, sued upon, is ultra vires the bank and wholly void. Counsel for plaintiff contend in substance that the court erred in entering the judgment (following the directed verdict) because (1) the sale of the bonds by the bank to plaintiff, coupled with its written agreement to repurchase them at maturity at par and accrued interest, amounts to a conditional sale, which is valid as such and the statute has no application, and (2), even if it be considered that the bank in making the repurchase agreement acted ultra vires, plaintiff, having tendered the bonds, is entitled to recover back what he paid therefor plus accrued interest on an implied assumpsit,— the bank having retained the moneys it received in the transaction.

After considering the written agreement and the evidence, and after reviewing the printed briefs of re-

spective counsel and numerous adjudicated cases, we are of the opinion that the trial court erred in instructing the jury as it did and in entering the judgment in question. We think that there is merit in plaintiff's counsels' first contention as above. The case of *Wolf v. National Bank of Illinois*, 178 Ill. 85, is in point, where it appears that a national bank, in selling to a customer certain bonds of the Chicago Auditorium Association, agreed to repurchase them at a specified future time at their selling price with interest. It was *held* that the contract was one of conditional sale and not an option contract. The court said (pp. 93–5): "Under the contracts the amount to be paid by the bank to the plaintiff in case he desired to return the bonds was the face value and interest on the amount which plaintiff had paid, and interest from the time of payment. The obvious intention of the parties was to make a conditional sale, and the condition upon which the purchase was made was, that the bank should take the bonds back at the same price if within a specified time the plaintiff desired to return them. . . . Is it contrary to law or justice, or does it violate any rule of public policy, for a person to sell a horse, a cow, a promissory note or a bond for a specified sum and agree to take the article back within a given time for the same price? If it is, this contract might be condemned; otherwise not. . . . In the case under consideration the plaintiff notified the bank, before he agreed to take the bonds, that he would not take them unless the bank would agree to take them back, and the bank agreed, as a condition upon which plaintiff parted with his money and received the bonds, that it would take them back in the following January at the same price, and we see no reason why the bank should not abide by its contract." The case of *Freedman v. Madison & Kedzie State Bank*, 259 Ill. App. 519, may also be cited. It is there decided in substance that the agreement of an Illinois bank, selling bonds, to repurchase

them on certain conditions, is a valid agreement, and that where the bank fails to perform its agreement the buyer is not limited to an action to recover damages, but may tender the bonds and sue in assumpsit for the agreed price, keeping the tender good. A petition for certiorari was denied by our Supreme Court (259 Ill. App. XIV.) One of the contentions made by the Madison State Bank was that it was without authority to repurchase the bonds under the powers granted to it under its charter by the law of this State. In discussing the contention and deciding against it, the court, after citing certain cases, said (p. 523): "These cases also in effect hold that a sale with an agreement to repurchase by the vendor is only a conditional rather than an absolute sale." And the court, after citing certain Minnesota decisions, and disagreeing with certain holdings therein, further said (p. 524): "We are not cited to any statute which forbids expressly such contracts as were here made; and on the plainest principles we think defendant is estopped to set up that defense (ultra vires). Even if a statute expressly forbade it, there would remain the question of whether it was the intention of the legislature, by the enactment of the statute, to make such a contract wholly void as contrary to public policy."

And we think that there also is merit in plaintiff's counsels' second contention as above. In *Ohio & M. Ry. Co. v. McCarthy*, 96 U. S. 258, 267, it is said: "Corporations are presumed to contract within their powers. The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." In *Central Transp. Co. v. Pullman's Palace Car Co.*, 139 U. S. 24, it is said (p. 60):

"A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation by the law of its creation is incapable of making it, the courts, while refusing to maintain any

action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it.

"In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract."

See, also, *Logan County National Bank v. Townsend,* 139 U. S. 67, 74–78; *Merchants' Nat. Bank v. State Nat. Bank,* 10 Wall (U. S.) 604, 644–5; *People's Bank v. Manufacturers' Nat. Bank,* 101 U. S. 181, 183–4; *Thompson v. St. Nicholas Nat. Bank,* 146 U. S. 240, 251; *Aldrich v. Chemical Nat. Bank,* 176 U. S. 618, 636–7; *Citizens' Central Nat. Bank of New York v. Appleton,* 216 U. S. 196, 205–6. In the *Thompson* case it is said (p. 251): "Moreover, it has been held repeatedly by this court that where the provisions of the National Banking Act prohibit certain acts by banks or their officers, without imposing any penalty or forfeiture applicable to particular transactions which have been executed, their validity can be questioned only by the United States, and not by private parties." In the *Aldrich* case it is said (pp. 636–7): "There is nothing in the acts of congress authorizing or permitting a national bank to appropriate and use the money or property of others for its benefit without liability for so doing." In the *Appleton* case (pp. 205–6) it is decided in substance that although a contract made by a national bank may be illegal as ultra vires, an implied contract may exist compelling it to

account for the benefits actually received. (See, also, *First Nat. Bank v. Priest,* 50 Ill. 321, 323.)

But defendant's counsel contends that there can be no recovery by plaintiff in this case under an *implied* promise or agreement, "where the verified *statement of claim* alleges an *express* promise." Counsel refers to that portion of plaintiff's "affidavit of amount due," as above set forth, wherein plaintiff states that his demand is "for $37,085.41, due and owing to plaintiff from defendant *under its written agreement, dated November 1, 1929,*" etc. In support of his contention counsel cites certain Appellate Court decisions. But we think that plaintiff's declaration, in which are included the common counts, is sufficient to warrant a recovery under an implied promise or agreement of defendant. (*Sands v. Potter,* 165 Ill. 397, 407; *Evans v. Howell,* 211 Ill. 85, 92; *Arnold v. Dodson,* 272 Ill. 377, 381.) If counsel's contention be a good one, in those cases where an affidavit of claim has been filed by a plaintiff with his declaration and an affidavit of merits by a defendant with his plea, the result would be that such cases would be tried, as said in *Cox v. Aetna Casualty & Surety Co.,* 261 Ill. App. 394, 399, "upon the issues made by the affidavits instead of by the pleadings." In our opinion there is no merit in counsel's instant contention.

For the reasons indicated the judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*

KERNER and SCANLAN, JJ., concur.