# CARL NELSON v. CENTRAL METROPOLITAN BANK AND ANOTHER.[1]

March 11, 1932.

No. 28,703.

[1]Reported in 241 N. W. 585.

*Jackson, Walsh & Yackel* and *W. W. Dunn,* for appellants.
*Patrick J. Ryan,* for respondent.

OLSEN, J.

Defendant appeals from an order denying its motion for a new trial. There was a motion for amended findings of fact, a motion for amended conclusions of law, and a motion for judgment in favor of the defendant, all included in the same motion papers. As the court's order denying the three last mentioned motions is not appealable, we have for consideration only the order denying defendant's motion for a new trial.

Prior to June, 1925, plaintiff had purchased from defendant bank a number of notes and the real estate mortgages on lands in Montana and North Dakota securing same. In June, 1925, plaintiff brought suit against defendant bank to rescind the purchase of said notes and mortgages and to recover the amount he had paid therefor and certain taxes paid by him, on the ground of fraud on the part of defendant in the sale to him of said notes and securities. Similar cases by other parties against defendant are reported in Picha v. Central Met. Bank, 161 Minn. 211, 201 N. W. 315, 203 N. W. 617, and 161 Minn. 219, 201 N. W. 318, wherein recovery against defendant was sustained.

In January, 1924, there was an election or reëlection of directors and officers of the bank. E. L. Thornton was elected president and J. A. Wright vice president. There has been no subsequent election of officers or directors. In March, 1924, the defendant bank sold and transferred to the National Exchange Bank its cash and approved assets and transferred to that bank its deposit accounts to be paid by that bank. It retained other assets not accepted by the National Exchange Bank and went into voluntary liquidation. Defendant W. W. Dunn was appointed as liquidating trustee. Defendant bank ceased thereafter to conduct any general banking business.

In the suit brought by plaintiff in 1925 he sought to recover of defendant bank some $12,905 and interest thereon, on the ground stated. Defendant appeared and answered in the action by its attorneys. In view of the decisions in the Picha cases, defendant was in a position where a relitigation of substantially the same questions did not appear promising. A settlement of the suit was agreed upon by the attorneys for plaintiff and defendant. Mr. Wright, its vice president, acting for the bank, consulted with the attorneys and approved the settlement for the bank, in addition to the bank's attorneys. The settlement arrived at was that the bank should give plaintiff two notes, one for $4,500 due in ten days, and one for $8,905 due in 18 months, with interest at six per cent per annum. Plaintiff was to dismiss his suit on the merits, with prejudice, and assign the mortgages and notes held by him to Central Trust Company, a trust company affiliated with defendant, to hold as collateral and collect and apply proceeds thereof on the notes of $4,500 and $8,905. The settlement was completed on or about April 3, 1926. The two notes were made by defendant bank by J. A. Wright, its vice president, and delivered to plaintiff or his attorneys. Plaintiff assigned the notes and mortgages to the trust company and dismissed his action on the merits with prejudice. A trust agreement was executed by plaintiff and by defendant, acting by Wright as its vice president, and by the trust company.

The $4,500 note was paid, apparently by the trust company from funds collected by it. The $8,905 note has not been paid. Later in 1926 an addition to the trust agreement was made, more fully defining the powers of the trust company as to foreclosing the remaining mortgages. This later agreement was signed by the bank by W. W. Dunn as liquidating trustee. The mortgages have been foreclosed, and the trust company has received title to the lands mortgaged.

■ The present suit is for recovery on the $8,905 note. The defendant denies liability on the grounds that its vice president, J. A. Wright, had no authority to sign the name of the bank to the note or to the trust agreement, and that the note and agreement do not comply with G. S. 1923 (2 Mason, 1927) § 7678, and on the further

ground that the settlement of the prior suit was illegal and imposed no liability on the bank; hence the note was founded on an illegal consideration or no consideration.

The situation at the time the settlement was made is important. Plaintiff, under the decision in the Picha case, had a valid cause of action pending against the bank. He made a deduction of some of the interest, extended the time of payment, and dismissed his suit on the merits. The bank had answered in the suit and was represented therein by competent attorneys. We think its officers and directors, and its stockholders represented by them, were bound to take notice of steps taken for them in the litigation. The bank's attorneys and J. A. Wright, its vice president, so far as appears, were the only ones in actual charge of the litigation for the bank. It is true that Wright testified that he had no specific authority to sign these papers. But the court, from the circumstances shown, could well infer and find that Wright had authority to sign them.

The settlement, so far as appears, being made in good faith for the benefit of the bank by its attorneys and vice president, was valid. The note given as part of the settlement is but the evidence of the agreed payment to be made by the bank in such settlement. The situation and circumstances shown are sufficient to justify a finding that the vice president and attorneys of the bank had authority to make the settlement and that the note was but a part thereof. We cannot hold that this settlement comes within G. S. 1923 (2 Mason, 1927) § 7678, or that the note in suit is invalid because not signed by the cashier or other officer of the bank in addition to the vice president. Dana & White v. Bank of St. Paul, 4 Minn. 291 (385); Sutley v. Polk County State Bank, 162 Minn. 118, 202 N. W. 338; and Harriet State Bank v. Samels, 164 Minn. 265, 204 N. W. 938, may be referred to.

It is contended that the settlement was invalid and void on the ground that the suit wherein it was made was an action on a contract by one officer of the bank to repurchase mortgages and notes sold by it. The complaint in the prior suit was substantially the same as the complaint in the Picha case, 161 Minn. 211, 201 N. W.

315, 203 N. W. 617, which was held to be a complaint for rescission on the ground of fraud.

The case of Eberlein v. Stockyards M. & T. Co. 164 Minn. 323, 204 N. W. 961, was an action on contract and does not overrule the Picha case.

■ In addition to finding that Wright had authority to sign the notes and trust agreement for and on behalf of defendant bank, the court also found that the bank was estopped from now denying his authority. That finding is reasonably sustained by the evidence.

The plaintiff at the time of the settlement made a material reduction of his claim for interest, extended the time for payment, and dismissed his then pending action on the merits, all for the benefit of the bank. The bank, with knowledge of the settlement, stood by for some three years, until this action was brought. It never has and does not now seek to rescind the settlement.

The case of Greene v. First Nat. Bank, 172 Minn. 310, 215 N. W. 213, 60 A. L. R. 814, was decided under the federal national bank law. We need not here discuss what differences, if any, there are between that law and our state banking laws. The opinion states that the action was one to recover on the ground that defendant had agreed to "repurchase the mortgages whenever plaintiff requested defendant to take them off his hands." This was an action on contract only.

As indicated in Farmers & M. Sav. Bank v. Crookston State Bank, 169 Minn. 249, 210 N. W. 998, and Peoples Bank v. Mfrs. Nat. Bank, 101 U. S. 181, 25 L. ed. 907, a bank, whether state or national, may guarantee paper owned and sold by it. Farmers & M. State Bank v. Mellum, 173 Minn. 325, 330, 217 N. W. 381.

In the Greene case, 172 Minn. 310, 314, 215 N. W. 213, 60 A. L. R. 814, this court's decision was based on the statement in the concluding paragraph that "we feel bound to follow the rule of the federal courts in a case like this involving contracts made by a corporation deriving its powers from an act of congress."

The Greene case is cited in Federal Land Bank v. Crookston Tr. Co. 180 Minn. 319, 325, 230 N. W. 797, 800, in connection with this statement:

"Doubtless there are many cases where a corporation is estopped from raising such a defense. [Ultra vires.] But in all such cases the corporation has participated in the benefits. [Citing bank cases from this and other jurisdictions.] But, as hereinbefore indicated, we hold that defendant did not participate in the benefits of this transaction."

Our conclusion is that the decisive findings of the court in the present case are sustained by the evidence, and the conclusions of law are sustained by such findings.

Other errors assigned have been examined and found to present no reversible error.

Order affirmed.

[1]Reported in 241 N. W. 588.