AWOTIN *v.* ATLAS EXCHANGE NATIONAL BANK OF CHICAGO.

No. 661.   Argued April 10, 1935.—Decided April 29, 1935.

*Mr. Edward C. Higgins,* with whom *Messrs. Samuel A. Ettelson* and *Herbert A. Salzman* were on the brief, for petitioner.

*Mr. Daniel M. Healy* filed a brief on behalf of respondent.

Mr. Justice Stone delivered the opinion of the Court.

This case comes here on certiorari to review a determination of the Appellate Court, First District, of the State of Illinois, that respondent, a national banking association, has incurred no liability in consequence of the failure to perform its contract with the petitioner, declared by the court to be invalid because in violation of R. S. § 5136, as amended February 25, 1927, c. 191, § 2, 44 Stat. 1224, 1226.

On November 1, 1929, petitioner purchased of respondent at par thirty-five $1,000 Mortgage Bonds of the First National Company Collateral Trust. Contemporaneously with the purchase, and as an inducement and part consideration for it, respondent agreed in writing at petitioner's option to repurchase the bonds at maturity, at par and accrued interest. Petitioner's declaration in several counts set up, in special assumpsit, respondent's breach of the express contract to repurchase the bonds, and, in general assumpsit, the obligation of respondent to return the sum received for the bonds. Judgment of the trial court for petitioner on the pleadings, overruling the defense that the contract was *ultra vires* and void, was reversed by the Appellate Court, 275 Ill. App. 530, and the Supreme Court of the State denied leave to appeal.

Revised Statutes, § 5136, authorizes national banks to carry on a banking business and defines their powers. By the amendment of February 25, 1927, a proviso was added to paragraph (7), reading:

" *Provided,* That the business of buying and selling investment securities shall hereafter be limited to buying and selling without recourse marketable obligations evidencing indebtedness of any person . . . or corporation, in the form of bonds, notes, and/or debentures, commonly known as investment securities, . . ." It is the contention of petitioner that respondent's contract to repurchase the bonds was incidental to its authority to do a banking business and was not forbidden by the proviso; that in any case respondent is estopped to set up its invalidity; and that, even if the contract is held to be invalid, respondent is bound to make restitution of the purchase price.

1. Petitioner insists that the words of the statute, " without recourse," must be taken to have only the technical legal significance in which they are used to limit the liability of an endorser of negotiable paper, as meaning without liability as an endorser or guarantor of the obligation of a third party, and that respondent did not assume that form of liability by agreeing to repurchase the bonds. But when the words are read in their context, and in the light of the evident purpose of the proviso, it is apparent that they were intended to have a broader meaning and one more consonant with all the different forms of business to which the proviso relates.

The evil aimed at is concededly a consequence of either an endorsement or guaranty by the bank of the paper which it sells. Both are forms of contingent liability inimical to sound banking and perilous to the interest of depositors and the public. But the liability is the same, in point of substance and of consequences, whether it ensues from technical endorsements of negotiable paper which the bank has sold, or from any other form of con-

tract by which the bank assumes the risk of loss which would otherwise fall on the buyer of securities, or undertakes to insure to the seller the benefit of .an increase in value of securities which would otherwise accrue to the bank. See *Logan County National Bank* v. *Townsend,* 139 U. S. 67.

The proviso was the first express recognition of the authority of national banks to engage in the business of dealing in securities (see H. R. Report No. 83, p. 3; Sen. Report No. 473, p. 7, 69th Cong. 1st Sess.), and subjected the business to the limitation that it must be conducted without recourse. The limitation is expressly made applicable both to buying and selling "marketable obligations evidencing indebtedness in the form of bonds, notes or debentures." The words, if restricted in their meaning to the endorsement. or guaranty of negotiable paper, could have no application to the purchase of such obligations, and normally would have none to the sale of bonds and debentures, which are usually negotiated without endorsement. A meaning is to be preferred, if reasonably admissible, which would permit their application, as the statute prescribes, to both forms of transactions and to all the specified classes of securities. Both the form and purpose of the statute impel the conclusion that the words were used in a broad and nontechnical sense, as precluding, at least, any form of arrangement or agreement in consequence of which the bank is obligated to save the purchaser harmless from loss incurred by reason of his purchase. See *Knass* v. *Madison & Kedzie Bank,* 354 Ill. 554; 188 N. E. 836; *Hoffman* v. *Sears Community Bank,* 356 Ill. 598; 191 N. E. 280; *Lyons* v. *Fitzpatrick,* 52 La. Annual, 697, 699; 27 So. 110; *Greene* v. *First National Bank,* 172 Minn. 310; 215 N. W. 213.

Respondent, by agreeing to repurchase the bonds at the same price petitioner had paid for them, plus their ac-

crued interest, undertook to save petitioner harmless from all risk of loss on his purchase, as effectively as if it had endorsed the bonds without restriction or had guaranteed their payment at maturity. The contract was therefore one which the *statute prohibits and for the breach of which the law affords no remedy.

2. The petitioner, who was chargeable with knowledge of the prohibition of the statute, may not invoke an estoppel to impose a liability which the statute forbids. *Texas & Pacific Ry. Co.* v. *Pottorff,* 291 U. S. 245, 260; *California Bank* v. *Kennedy,* 167 U. S. 362; *Concord First National Bank* v. *Hawkins,* 174 U. S. 364, 369; *First National Bank* v. *Converse,* 200 U. S. 425, 439, 440; *Merchants' National Bank* v. *Wehrmann,* 202 U. S. 295, 302.

3. The state court rejected the contention that it was the legal duty of respondent to make restitution to petitioner of the purchase price of the bonds which it had received in consideration of its invalid contract. We do not stop to consider how far the court, as is contended, based its decision upon procedural grounds, for it considered the merits and declared that no right arose upon an implied assumpsit although respondent had received the benefit of a contract which was *ultra vires* and void.

The opinion does not disclose whether this conclusion was rested upon the court's interpretation of rules of state law governing the *quasi* contractual right to compel restitution of the purchase price, or upon the court's construction of R. S. § 5136. If our jurisdiction depended upon its decision of the federal·question, the opinion fails to reveal whether it is the federal or the state question which was decided, see *Lynch* v. *New York,* 293 U. S. 52; compare *Logan County Bank* v. *Townsend, supra,* 72, 73. But we have jurisdiction of the cause to review the ruling of the state court that the express contract was rendered invalid by the federal statute. While we may not properly exercise our jurisdiction to review or set aside

the state court's application of local law to the *quasi* contractual demand, we may, in the present ambiguous state of the record, appropriately determine whether the federal statute precludes recovery of the purchase money. We think that such is its effect.

The invalidity of the contract was not due to the mere absence of power in the bank to enter into it, in which case restitution, not inequitable to the bank or inimical to the public interest, might be compelled. See *Logan County Bank* v. *Townsend, supra,* 74, 75; *Hitchcock* v. *Galveston,* 96 U. S. 341, 350. The contract is invalid because it is within the broad sweep of the statute which by mandatory language sets up definite limits upon the liability which may be incurred by a national bank, in the course of its business of dealing in securities, by confining the business to buying and selling "without recourse." The phrase is broader than a mere limitation upon the power to contract, although embracing that limitation. It is a prohibition of liability, whatever its form, by way of "recourse" growing out of the transaction of the business. See *Bank of United States* v. *Owens,* 2 Pet. 527, 537; *Brown* v. *Tarkington,* 3 Wall. 377, 381; *Thomas* v. *Richmond,* 12 Wall. 349, 356; *Continental Wall Paper Co.* v. *Voight & Sons Co.,* 212 U. S. 227, 262. National banks are public institutions and the purpose and effect of the statute is to protect their depositors and stockholders and the public from the hazards of contingent liabilities, attendant upon the assumption by the bank of the risk of loss by its customers, resulting from the permitted dealing in securities by the bank. The prohibition would be nullified and the evil sought to be avoided would persist, if, notwithstanding the illegality of the contract to repurchase, the buyer, upon tender of the bonds, could recover all that he had paid for them. Such a construction of the statute is inadmissible.

*Affirmed.*