## GENESSEE TRUSTEE CORPORATION v. SMITH.
### No. 7619.

Circuit Court of Appeals, Sixth Circuit.
March 13, 1939.

Guy W. Selby and G. Franklin Killeen, both of Flint, Mich. (Guy W. Selby and G. Franklin Killeen, both of Flint, Mich., on the brief), for appellant.

Albert J. Michelson, of Flint, Mich. (S. S. Pearlstine and A. J. Michelson, both of Flint, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing petition of appellant (plaintiff below).

On December 31, 1929, the Flint Golf Club, a Michigan corporation, executed and sold to the First National Bank of Flint, Michigan, a corporation incorporated under the National Banking Act, a series of notes aggregating Sixty Thousand ($60,000) Dollars, secured by lien on real estate. Later the payee of the notes was succeeded in business by the First National Bank & Trust Company of Flint, Michigan, also created under the National Banking Act, later placed in liquidation by the Comptroller of the Currency and the appellee, John S. Smith, appointed receiver. Two of the notes of the principal sum of $5,000 each were before maturity indorsed and sold by the First National Bank & Trust Company of Flint, Michigan, to the Genessee County Savings Bank, a banking corporation under the laws of Michigan which bank was placed in the custody of a conservator and before maturity he indorsed and sold the above notes to the appellant, the Genessee Trustee Corporation. Each of the notes was duly presented to the maker for payment and dishonored, due notice of which was given to the indorsers and their assigns. Demand for payment was made of the appellee, receiver, which he refused. The appellant filed its declaration setting up the foregoing facts and the appellee moved to dismiss on the sole ground that Revised Statutes § 5136, as amended by the Act of February 25, 1927, U.S.C.A., Title 12, § 24(7) prohibited a national bank from selling and indorsing notes in any manner except "without recourse." The lower court dismissed the proceedings, hence this appeal.

U.S.C.A., Title 12, § 24(7), R.S. § 5136, 42 Stat. 767, authorizes a national bank "to exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt." By an amendment of February 25, 1927 (44 Stat. 1224, 1226) which "Provided, That the business of buying and selling investment securities shall hereafter be limited to buying and selling without recourse marketable obligations evidencing indebtedness of any person * * * or corporation, in the form of bonds, notes and/or debentures, commonly known as investment securities under such further definition of the term 'investment securities' as may by regulation be prescribed by the Comptroller of the Currency."

The Comptroller of the Currency June 13, 1927, promulgated regulations defining and classifying investment securities to be dealt in by national banks as being those which were marketable and defined "marketable" to mean a security salable readily at an intrinsic value and further provided in his regulations that such securities must be sufficiently large to make marketability possible and that their public distribution must be made in such manner as to protect and insure their marketability.

The question presented for decision is whether a national bank may indorse a note which it has taken for borrowed money secured by a lien on real estate on its sale to another for cash, so as to bind it by such ordinary incidents of an indorsement as are not expressly waived; that is to say, though the indorsement does not recite that it is "without recourse," is a national bank so restricted by the Acts of Congress that it can only transfer its paper taken for borrowed money secured by a lien on real estate by an indorsement without recourse.

Where the language of a statute is obscure or of doubtful meaning, the courts in construing it may, with propriety, recur to the history of the times when it was passed and of the act itself in order to ascertain the reason as well as the meaning of its provisions and it may also consider all conditions and circumstances surrounding its enactment in the light of the general policy of previous legislation on the same subject. The Delaware, 161 U.S. 459, 474,

16 S.Ct. 516, 40 L.Ed. 771; Platt v. Union Pacific Railroad, 99 U.S. 48, 67, 25 L.Ed. 424.

The word "investment" has no technical definition as applied to money and usually its meaning must be determined from the context. In its most comprehensive sense, it is generally understood to signify the laying out of money in such a manner that it may produce revenue whether the particular method be a loan or the purchase of stocks, notes, securities or other property. In common parlance, it means putting out money on interest either by loans or the purchase of income-producing property. It ordinarily means the use of capital for a specified time for the purpose of deriving an income therefrom as distinguished from a temporary or speculative use of it.

The word "securities" is a general term for evidences of debt. It is flexible in meaning and is ordinarily used as a synonym for investments. In its generic sense, it covers every interest or right whether legal or equitable, absolute or contingent, attached to or which is a specific charge on property. However, it is not necessarily limited to secured debts.

Marketable obligations means those capable of being marketed; that may or can be bought or sold; suitable for the market or that find a ready market; those in demand and salable.

R.S. § 5136, U.S.C.A., Title 12, § 24(7), was first incorporated in the Act of June 3, 1864 (13 Stat. 101). As a part of the same act (13 Stat. 107) (now R.S. § 5137, U.S.C.A. Title 12, § 29) the power of a national bank to hold real property was specifically limited and national banks were prohibited from making loans on real estate. Union National Bank v. Matthews, 98 U.S. 621, 629, 25 L.Ed. 188.

By the Act of September 7, 1916 (39 Stat. 753, U.S.C.A., Title 12, § 92) a national bank doing business in a place with a population of five thousand or less, in addition to its other powers, was authorized to act as an agent or broker in making or securing loans on real estate within one hundred miles of the location of the bank. This Act provided "that no such bank shall in any case guarantee either the principal or interest of any such loans."

In the case at bar the bank did not act as broker or agent but made the loans on its own account and in selling the notes secured by the mortgages, dealt with its own property. Nevertheless, we think the bank was prohibited by the Act from guaranteeing payment of the principal or interest of the loans. The language used "in any case" indicates that it was the policy of Congress to prohibit national banks from guaranteeing notes secured by real estate mortgages in any case whatever.

Under the Act of September 7, 1916, 39 Stat. 754, U.S.C.A., Title 12, § 371, national banks not situated in central reserve cities were authorized to make loans upon improved real estate but such loans were limited to a maturity of one year and not to exceed fifty percent of the actual value of the property offered as security.

It will be noted from the foregoing history of legislation on the subject that the loan here in question was unauthorized under the National Banking Act at the time made.

The statute here in question was before the Supreme Court for interpretation in the case of Awotin v. Atlas Exchange National Bank of Chicago, 295 U.S. 209, 214, 55 S.Ct. 674, 676, 79 L.Ed. 1393.

The court there stated clearly and plainly that the words "without recourse" as contained in the amendment were not limited to their ordinary technical legal significance as applied to an indorser of negotiable papers but on the contrary when read in their context in the light of the purpose of the proviso in the amendment, they were intended to have, and must be construed as having, a broader meaning and one more consonant with all the different forms of business to which the proviso relates. The opinion then adds: "The evil aimed at is concededly a consequence of either an indorsement or guaranty by the bank of the paper which it sells. Both are forms of contingent liability inimical to sound banking and perilous to the interest of depositors and the public. But the liability is the same, in point of substance and of consequences, whether it ensues from technical indorsements of negotiable paper which the bank has sold or from any other form of contract by which the bank assumes the risk of loss which would otherwise fall on the buyer of securities, or undertakes to insure to the seller the benefit of an increase in value of securities which would otherwise accrue to the bank. See Logan County National Bank v. Townsend, 139 U.S. 67, 11 S.Ct. 496, 35 L.Ed. 107."

Still later in the opinion it was said: "Both the form and purpose of the statute impel the conclusion that the words were used in a broad and nontechnical sense, as precluding, at least, any form of arrangement or agreement in consequence of which the bank is obligated to save the purchaser harmless from loss incurred by reason of his purchase. See Knass v. Madison and K. State Bank, 354 Ill. 554, 188 N.E. 836; Hoffman v. Sears Community State Bank, 356 Ill. 598, 191 N.E. 280; Lyons v. Fitzpatrick, 52 La.Ann. 697, 699, 27 So. 110; Greene v. First Nat. Bank, 172 Minn. 310, 215 N.W. 213, 60 A.L.R. 814."

The court then cites the substance of the agreement relied on in that case and concludes by saying: "The contract was therefore one which the statute prohibits and for the breach of which the law affords no remedy." In disposing of the plea of estoppel likewise urged here the court said: "The petitioner [plaintiff], who was chargeable with knowledge of the prohibition of the statute, may not invoke an estoppel to impose a liability which the statute forbids"—citing cases.

We interpret this opinion as effectively disposing of all questions raised on this appeal.

The judgment of the lower court is affirmed.