DEPARTMENT OF FINANCAL INSTITUTIONS *v.* NEUMANN.

[No. 27,371.   Filed April 9, 1940.]

*Harry P. Schultz,* of Lafayette, for appellant.

*Edgar D. Randolph* and *John B. Randolph,* both of Lafayette, for appellee.

FANSLER, J.—In April, 1926, the appellee Augusta M. Neumann purchased from the National Fowler Bank of Lafayette, Indiana, seven street improvement bonds issued by the City of Hammond. Each bond was in

the principal sum of $429.39, and bore interest at the rate of 6 per cent. per annum. The first of the bonds matured in 1929, and one bond matured each succeeding year thereafter. These bonds were issued under the local improvement statutes to defray the cost of improving a street, and are a lien upon the property abutting upon the street. They are not the obligation of the City of Hammond, and are payable only out of assessments for the improvement received by that city. The appellee paid par plus accrued interest, and at the time of the purchase of the bonds the cashier of the bank stated orally that the bank would pay the bonds when they became due if they were not paid by the City of Hammond.

In 1932 a banking institution known as Fowler Bank City Trust Company was organized under the laws of the State of Indiana, and on the date of its organization the National Fowler Bank and the City Trust Company of Lafayette, a trust company organized under the laws of the State of Indiana, transferred all of their assets to the new institution, which assumed all of the liabilities of both. The City of Hammond paid the bonds due in 1929, 1930, and 1931. When the 1932 bond became due it was not paid. The appellee presented it to the Fowler Bank City Trust Company and demanded that it be taken up pursuant to the agreement of the National Fowler Bank, and the bond was paid by the new bank. In 1934 the Fowler Bank City Trust Company became insolvent and liquidation proceedings were instituted in the Tippecanoe Circuit Court, where they are still pending. The institution is insolvent, and depositors and creditors will receive less than 100 per cent. upon their claims.

This action is a claim against the assets of the Fowler Bank City Trust Company for payment of the

remaining three Hammond bonds held by the appellee upon which the City of Hammond defaulted, or in the alternative to recover the purchase price upon the return of the bonds. There was a trial, and judgment for the appellee for $1,331.36, the amount paid for the bonds, and that the claim have preference over the claims of depositors and general creditors, and that, upon the payment of the claim in full, the bonds in question be surrendered to the liquidating officer. This judgment must have been entered upon the theory that the contract was ultra vires, and that the appellee was entitled to have it rescinded, and recover the amount paid. The appellant filed a motion for a new trial upon the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law, and that the assessment of the amount of recovery is erroneous, being too large. The appellee then filed a remittitur in the following words: "The claimant and plaintiff Augusta M. Neumann hereby remits from the amount of the judgment heretofore entered herein all sums in excess of an amount equal to the total dividends which have been or will be paid to Augusta M. Neumann on a common claim of $1,494.25 against the Fowler Bank City Trust Company of Lafayette, Indiana, and the Department of Financial Institutions of the State of Indiana." The court thereupon overruled the motion for a new trial, and modified the judgment to conform to the terms of the remittitur. The remitting order was treated as in effect at the time the motion for a new trial was overruled. The amount mentioned in the remittitur, $1,494.25, is the amount which was due upon the delinquent bonds and coupons, and the amount the appellee was entitled to recover if the contract with the bank was valid and binding.

The bonds were introduced in evidence, and in preparing the bill of exceptions containing the evidence the reporter incorporated the original bonds and ▮ they are in and a part of the transcript ·on appeal. The appellee contends that, under the rule that no original paper or document embodied in a transcript will be considered on appeal (see *Mitchell, Ex'r, et al.* v. *Beissenherz* (1922), 192 Ind. 587, 135 N. E. 885), the original bonds cannot be considered as a part of the record, and that therefore, since it is apparent that the bill of exceptions does not contain all of the evidence, no question is presented. The rule upon which the appellee relies refers to the pleadings and court orders as distinguished from papers and documents introduced in evidence. The inclusion of original exhibits in the bill of exceptions is quite common, and sometimes necessary to a determination of the case on appeal as in the case of ballots in election contests. The decisions authorize such a practice. *Indiana, etc., Ry. Co.* v. *Quick* (1887), 109 Ind. 295, 9 N. E. 788, 925; *Zeis* v. *Passwater* (1895), 142 Ind. 375, 41 N. E. 796; *Cincinnati, etc., R. Co.* v. *Stahle* (1906), 37 Ind. App. 539, 76 N. E. 551, 77 N. E. 363. The bonds may have some value, and they may be removed from the record and copies substituted upon proper petition.

It is conceded that the Fowler Bank City Trust Company is not liable under the contract unless the National Fowler Bank was bound by it. In *Greene* v. *First National Bank of Thief River Falls* (1927), 172 Minn. 310, 313, 314, 215 N. W. 213, 214, 60 A. L. R. 814, 817, 818, the Supreme Court of Minnesota had before it a contract by which a national bank sold mortgages which were its own property, and, as an

incident to the sale, guaranteed the payment of the principal and interest of the loans. The court recognized that jurisdiction to determine the powers of corporations operating under federal statutes, and the effect of the contracts of such corporations, is primarily in the federal courts, and concluded that:

"A contract to repurchase real estate mortgages which the bank has sold is in defiance of safe banking, tends to injure the depositors of the bank, and is contrary to public policy.

"The power to contract for the repurchase of a loan secured by a real estate mortgage is not expressly conferred by the National Banking Act. Neither is it incidental to those expressly conferred. . . . The failure to grant the power negatives its existence, for the power is of such a nature that it is not to be inferred in the absence of language clearly indicating its existence.

"For the foregoing reasons we hold that, even though the alleged contracts were made, they cannot be enforced against the bank.

"We have not overlooked the argument that the defendant is estopped from asserting its lack of authority to make the alleged contracts. Conceding that plaintiff paid his money to defendant on the faith of the contracts and that defendant has received and enjoyed the benefits thereof, nevertheless there is no estoppel, for it is firmly settled by the federal decisions that a contract made by a corporation beyond the scope of its powers, express or implied, on a proper construction of its charter, cannot be enforced or rendered enforceable by the application of the doctrine of estoppel."

This Minnesota case is cited with approval in *Awotin* v. *Atlas Exchange National Bank of Chicago* (1935), 295 U. S. 209, 212, 214, 55 S. Ct. 674, 79 L. Ed. 1393.

The agreement dealt with in the Awotin case was executed subsequent to the amendment of the federal statute of February 25, 1927 (section 2, 44 Stat. 1226, 12 U. S. C. A. § 24), which provides that the business of buying and selling investment securities shall be limited to buying and selling without recourse. The court said: "The proviso was the first express recognition of the authority of national banks to engage in the business of dealing in securities (see H. R. Report No. 83, p. 3; Sen. Report No. 473, p. 7, 69th Cong. 1st Sess.), and subjected the business to the limitation that it must be conducted without recourse." Concerning the contention that it was the duty of the bank to make restitution of the purchase price, it is said: "The prohibition would be nullified and the evil sought to be avoided would persist, if, notwithstanding the illegality of the contract to repurchase, the buyer, upon tender of the bonds, could recover all that he had paid for them. Such a construction of the statute is inadmissible." In *Kimen* v. *Atlas Exchange National Bank of Chicago* (1937), 92 F. (2d) 615, 618, the Seventh Circuit Court of Appeals, having before it a contract made prior to the amendment, in answer to the contention that the Awotin case furnishes no guide as to the status of the law prior to the amendment, said:

"It should be observed, however, that in the decision cited the Supreme Court said: 'National banks are public institutions, and the purpose and effect of the statute is to protect their depositors and stockholders and the public from the hazards of contingent liabilities, attendant upon the assumption by the bank of the risk of loss by its customers, resulting from the permitted dealing in securities by the bank.' In *Greene* v. *First National Bank*, 172 Minn. 310, 215 N. W. 213, 60 A. L. R. 814, discussing the question of ultra vires, the

Supreme Court of Minnesota held that national banks did not have the power prior to the amendment to deal in investment securities; that an implied prohibition against such dealings resulted from the failure of Congress to grant the power; that the failure to grant the power negatived its existence. The decision was based upon the language of the Supreme Court in *California National Bank* v. *Kennedy,* 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198, where the court came to a similar conclusion in dealing with the acquisition of stock in another corporation by a national bank. In *Knass* v. *Madison and Kedzie Bank,* 354 Ill. 554, 188 N. E. 836, discussing the power of state banks under the state laws, the court held that guarantees of securities sold by state banks are not within the power conferred by the statutes to do a general banking business; that such guarantees were neither expressly granted nor to be inferred as incident to the powers granted; and that the power was prohibited. The Supreme Court of the United States in *Awotin* v. *Atlas Exchange National Bank of Chicago, supra,* cited each of these cases with approval, and we believe the doctrine fully applicable to the situation before us. . . .

"It seems apparent that such contracts are not only now, but always have been, contrary to the public policy of all of the states and of the national government so far as charters of banking institutions are concerned."

It appears to us that, notwithstanding the contract dealt with was executed prior to the amendment, the language of the opinion in the Awotin case indicates a view consistent with the result reached by the Circuit Court of Appeals. The bonds involved in the case at bar are substantially like the mortgages involved in the Minnesota case. The pay-

ment of the money involved is secured by a lien upon the real estate. Since the national bank which made the contract derives its power from an act of Congress and is subject to the paramount authority of the United States, we feel bound to follow the rule announced in the cases quoted, which seems to have the approval of the United States Supreme Court.

Judgment reversed, with instructions to sustain the motion for a new trial.

NOTE.—Reported in 26 N. E. (2d) 388.