### GOLDSTEIN v. UNION NAT. BANK OF DALLAS et al. (No. 6839.)

(Court of Civil Appeals of Texas. Dallas. Nov. 15, 1919.)

1. EVIDENCE ⬄443(1)—PAROL PROOF OF COLLATERAL AGREEMENT AS TO NOTE.

Where a national bank loaned money to the statutory limit to a company, and, that the company might have further funds, agreed with defendants, its vice president and a controlling stockholder of the company, to discount their notes, paying the proceeds to the company, and to apply in extinguishment of the notes deposits subsequently received from the company, the agreement was collateral to the promise in the note sued on, executed pursuant to it, and was not merged in the note, being provable by parol and valid as a defense, whether made orally or in writing.

2. BANKS AND BANKING ⬄266—AGREEMENT TO APPLY SPECIAL DEPOSITS ON ACCOMMODATION NOTE.

Where a national bank agreed with defendants, its vice president, and another controlling stockholder in a company, to which the

bank already had lent the legal limit, that deposits made by the company after the bank had discounted defendants' paper, executed for the accommodation of the company, would be applied only in payment of such paper, deposits made pursuant to the agreement were special deposits for a particular purpose, not creating the relation of debtor and creditor between the bank and the company.

3. BANKS AND BANKING ⬄261(2) — OVERLOAN BY NATIONAL BANK NO DEFENSE TO SUIT ON NOTE.

That a national bank, through the device of discounting accommodation paper of controlling stockholders of a company, exceeded its legal loaning capacity to such company is no defense to the makers of the accommodation paper when sued on one of their notes, the matter of overloan being solely between national government and bank.

4. BANKS AND BANKING ⬄280 — PLEADING MATTER OF INDUCEMENT IN ACTION ON ACCOMMODATION NOTE.

In suit by a national bank on a note executed for accommodation purposes by controlling stockholders in a company to which the bank had already loaned the legal limit, allegations as to the fact of overloan to the company and the device adopted to enable the bank by discounting defendants' paper to exceed the legal limit *held* properly pleaded as matter of inducement leading up to the agreement of the bank to apply deposits by the company solely to any accommodation paper.

5. BANKS AND BANKING ⬄269—NATIONAL BANK'S AGREEMENT FOR APPLICATION ON ACCOMMODATION PAPER OF DEPOSITS OF ACCOMMODATED PARTY.

Where a company solicited its controlling stockholders to execute a demand note to be discounted for its benefit with a national bank, agreeing to make deposits with the bank to be applied solely to payment of the note, to which the bank agreed, and subsequently sufficient deposits were made to pay off the note, though the bank wrongfully applied them to another debt, the bank cannot recover against the accommodation makers on the note, which, in legal contemplation, has been paid.

6. BANKS AND BANKING ⬄269—PLEADING IN ANSWER PRIOR PERFORMANCE OF COLLATERAL AGREEMENT AS TO ACCOMMODATION NOTE.

In suit on an accommodation note executed by the controlling stockholders of a company and discounted by a national bank, which paid the proceeds to the company, defendants pleading an agreement whereby subsequent deposits of the company should be applied by the bank solely to extinguishment of the note, it was proper also to plead that a prior note, executed under the same agreement, had been discharged in such manner.

7. BANKS AND BANKING ⬄280 — DISCOUNTED NOTE; PLEA OF PAYMENT; EVIDENCE.

In an action by a national bank on paper executed for the accommodation of a company by two controlling stockholders, defendants, under

the allegations of defendants' answer, pleading payment and setting up the agreement of the bank to apply subsequent deposits by the company solely to payment of the note, defendants were entitled to introduce in evidence entries made in the bank book of the company by the receiving teller of the bank.

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Suit by the Union National Bank of Dallas against A. Goldstein and I. B. Walker, wherein the Commonwealth National Bank of Dallas intervened as plaintiff. From judgment for plaintiff intervener against defendants, defendant Goldstein appeals. Reversed, and cause remanded in partial conformity to answers to questions certified to the Supreme Court (213 S. W. 584).

Victor H. Hexter and Etheridge & McCormick, all of Dallas, for appellant.

D. E. Upthegrove, of St. Louis, Mo., and T. L. Camp and Walter Nold, both of Dallas, for appellees.

TALBOT, J. This suit was instituted by the Union National Bank of Dallas against appellant and I. B. Walker on a promissory note for the sum of $5,000, dated August 30, 1909, payable to said bank or order on demand, and providing for interest from maturity at the rate of 8 per cent. per annum, and for 10 per cent. attorney's fees. On May 20, 1911, the appellee Commonwealth National Bank of Dallas intervened in the suit, alleging that it had purchased the note sued on since the institution of the suit, and it was agreed by all parties in open court that these allegations were true, and that the said Commonwealth National Bank had acquired all the right, title, and interest of the Union National Bank in and to said note, and entitled to the relief prayed for herein by the said last-named bank. The Union National Bank and the intervener Commonwealth National Bank are both alleged to be national banks, incorporated under and by virtue of the national banking laws, with their respective places of business in the city of Dallas, Tex. It is alleged that the note sued upon was executed by the defendants, A. Goldstein and I. B. Walker, made payable to the Union National Bank or order on demand, and delivered to said bank; that at this time the said I. B. Walker was active vice president and general manager of said Union National Bank and was, in connection with the defendant A. Goldstein and one L. Wenar, a controlling stockholder and director of L. Wenar Millinery Company, a corporation engaged in business in the city of Dallas, and that said L. Wenar Millinery Company was a depositor and customer of the Union National Bank. The defendants Walker and Goldstein both answered, but Walker made no defense in the trial court. The case was tried before the court without a jury, and the trial resulted in a judgment in favor of intervener against the appellant and I. B. Walker for the amount sued for, and the defendant Goldstein alone appealed.

After demurrers and a general denial, the defendant Goldstein pleaded in the fourth paragraph of his answer as follows:

"And for special answer herein to all the pleadings against him herein, this defendant comes by attorneys, and says that heretofore, to wit, on or about August 30, 1909, and for some time prior thereto, L. Wenar Millinery Company, a corporation engaged in business in the city of Dallas, was largely indebted to the Union National Bank of Dallas in a sum approximating $20,000, which was the full loaning capacity of said Union National Bank of Dallas to any one person, firm, or association; that this indebtedness was carried in said bank to the extent of $15,000 in the form of notes of the said L. Wenar Millinery Company, which when they came due from time to time were renewed and extended by said bank, and a part of the indebtedness was carried in said bank as an overdraft; that the loaning power of said Union National Bank was not sufficient to enable said Union National Bank of Dallas without violating the law to furnish to the said L. Wenar Millinery Company all of the money that the said L. Wenar Millinery Company sometimes required; that prior to the 30th day of August, 1909, the said L. Wenar Millinery Company and the said Union National Bank of Dallas, acting through its vice president and general manager, I. B. Walker, and this defendant entered into an agreement, by the terms of which this defendant agreed to execute to the Union National Bank and in conjunction with his codefendant, I. B. Walker, and for the accommodation of the said L. Wenar Millinery Company, to a limited extent and as occasion should arise, notes to be discounted by said Union National Bank, and the proceeds to be used by said L. Wenar Millinery Company in transacting its business in some way other than paying any part of its indebtedness to said Union National Bank, which was within the loaning power of said bank to lend the said millinery company, and in consideration of this defendant executing paper as aforesaid for the accommodation of said L. Wenar Millinery Company the said L. Wenar Millinery Company agreed with this defendant to make deposits in the Union National Bank of Dallas from time to time in the usual course of business, and that said deposits when so made should be applied at once to the extinguishing pro tanto of any note made by this defendant under the said agreement until the same was fully liquidated and extinguished, and that no part of said deposits should be applied to the liquidation or extinguishment of any debt or demand existing in favor of the Union National Bank of Dallas against said L. Wenar Millinery Company or be checked out for any other purposes of the said L. Wenar Millinery Company, and the said Union National Bank of Dallas agreed to discount said paper as it might be made by this defendant, and to receive the deposits of the said L. Wenar Millinery Company as they were made from time

to time, and to apply the same exclusively to the liquidation and discharge of the notes which should be made by this defendant under said agreement until the same at any time outstanding should be fully paid off and discharged. This defendant further represents that the note sued on by the plaintiff herein, and now claimed by the intervenor herein, was executed by himself and his codefendant, I. B. Walker, under the agreement and undertaking aforesaid, as another note theretofore made by them had been also executed under said agreement, which other note for, to wit, $2,500 had been also paid off in accordance with said agreement prior to the execution of the note herein sued on; that this defendant received no consideration whatever for said note, the sole consideration therefor moving to the said L. Wenar Millinery Company, which received the total proceeds of the discount of said note by the plaintiff bank; that after the discount of the note herein sued on, which was on, to wit, the 7th day of November, 1911, the said L. Wenar Millinery Company deposited sums of money in the said Union National Bank of Dallas daily or frequently, and to the approximate extent of $4,000 per month during the months of November, December, January, February, and March next ensuing after execution of said note, which said deposits amounted to largely more than the principal, interest, and attorney's fees of the note herein sued on, and which deposits, so far as necessary to fully pay off and discharge the note herein sued on, belonged in equity to this defendant as a fund set aside by the said L. Wenar Millinery Company under an agreement with this defendant and with said Union National Bank of Dallas for the discharge and retirement of the note herein sued on, and if this defendant was not in equity the owner of said fund, then the said fund constituted an equitable security to this defendant to indemnify him against liability because of the execution by him of the note herein sued on, and this defendant became entitled to have the said deposits applied as they were made immediately to the liquidation pro tanto and to the ultimate entire liquidation of the note herein sued on, and it became the duty of the said Union National Bank of Dallas to so apply said deposits, but the Union National Bank of Dallas failed so to apply them, and, on the contrary, in violation of its agreement, applied said deposits in part to the extinguishment of indebtedness due by the said L. Wenar Millinery Company to it and in part the said Union National Bank of Dallas permitted said L. Wenar Millinery Company to check out said deposits without leaving them a sufficient amount to pay off and discharge the obligation herein sued on; that the agreement hereinbefore mentioned was made by and with the full knowledge of said Union National Bank of Dallas, and only by virtue of said agreement and because of the making thereof did the said Union National Bank secure from this defendant the note sued on herein, which was afterwards taken over by the Commonwealth National Bank of Dallas after maturity, and it was charged with the full knowledge of this defendant's defense thereto."

By supplemental petition the intervener, Commonwealth National Bank, demurred generally and specially to the foregong paragraph of appellant's answer, the third special exception thereto being as follows:

"This intervener specially excepts to that part of defendant Goldstein's said answer, beginning with the words 'that prior to the 30th day of August, 1909,' and ending with the words, 'should be fully paid off and discharged,' as contained on pages 2 and 3 of said defendant's amended original answer, for the following reasons, to wit:

"(a) Because said agreement, if any such was entered into, was made long prior to the execution and delivery of the notes herein sued upon, and if said agreement did exist it was merged into the written contract herein sued upon, and cannot now be urged as a defense.

"(b) Because it is not alleged whether said agreement was oral or in writing, and if said agreement is in writing the terms and conditions are not fully and specifically set out so as to enable this intervener to know the terms and conditions thereof; and, if oral, it is an attempt to vary and contradict the express terms of the written contract herein sued upon.

"(d) If it may be construed that such an agreement was made with I. B. Walker, and that he was an officer of the Union National Bank, then it appears that I. B. Walker was adversely interested to [the] bank of which he was an officer, and such contract, if made by the said I. B. Walker, would not be binding upon the bank unless notice was brought to the bank through some other and proper source and unless said contract was ratified by said bank.

"(e) Because it is not alleged that the Union National Bank had any power or authority to force the L. Wenar Millinery Company to apply such deposits as it might make to the payment of the note herein sued upon; it is alleged that such deposits as L. Wenar Millinery Company would make were placed in the Union National Bank for the payment of said note, and it is not shown by any proper pleading that the Union National Bank had any control whatever over the deposits of the L. Wenar Millinery Company after the execution of the note herein sued upon, and unless that be true the Union National Bank could not force the application of the L. Wenar Millinery Company's money to any specified account, and was wholly without authority so to do.

"(f) Because it would appear that such agreement, if any, in reference to the depositing of moneys of the L. Wenar Millinery Company in the said Union National Bank, and the application of same to the payment of the note herein sued upon, was made by and between the defendants A. Goldstein and I. B. Walker and the L. Wenar Millinery Company, and it was alleged that said deposits were so made in the usual course of business, and it would not, as a matter of law, extinguish any debt pro tanto, but would create the relation of debtor and creditor between said bank and L. Wenar Millinery Company."

This special demurrer was by the court sustained, and that part of the defendant's answer beginning with the words, "that prior to the 30th day of August, 1909," and ending with the words, "should be fully paid off

and discharged," was stricken out, and all of the balance of the paragraph of the answer quoted, was held to, be obnoxious to other special exceptions urged by the appellee, and was stricken out, except the following portion thereof, namely:

"That the agreement hereinbefore mentioned was made by and with the full knowledge of said Union National Bank of Dallas, and only by virtue of said agreement and because of the making thereof did the said Union National Bank secure from this defendant the note sued on herein, which was afterwards taken over by the Commonwealth National Bank of Dallas after maturity, and it was charged with the full knowledge of this defendant's defenses thereto."

[1, 2] It is assigned that the court erred in sustaining this demurrer, because the portion of the answer stricken "constituted a valid and legal pleading of a collateral contract made by the L. Wenar Millinery Company for whose accommodation the note sued on was given, with the bank the payee of the note and with the makers of the note, who were accommodation makers by which the deposits of the said Wenar Millinery Company made after the discount of said note became and were a fund set aside for the liquidation of said note, which was sufficient in amount to discharge the note." In this contention we concur. The whole contract of the parties in relation to the note sued on, according to the allegations of the answer, was not reduced to writing, and the agreement for the making and the application of deposits by the Wenar Millinery Company was collateral to the promise in the note and not merged in it. In other words, as argued by appellant, the fact that the note was given pursuant to a provision of the agreement respecting it, which provided that deposits made in the bank by the millinery company should be applied to its payment, was a fact collateral to and consistent with the note, which, together with the note, constituted and presented only the entire transaction or agreement between the parties. Proof of the agreement alleged by virtue of which the note in question was executed would not contradict the note. We are unable to see that there is any room here for application of the rule forbidding parol evidence which contradicts or varies a· writing. The contract alleged is not such an one as is required by the statute of frauds or by the common law to be ·in writing, and it was not absolutely essential that it be alleged whether its evidence was a writing or rested in parol. The agreement being collateral to the note sued on, and serving as an inducement to the signing of the note, it could be proved by parol evidence. The portion of the defendant's answer stricken out in response to the demurrer under consideration was, in effect, a plea of payment, and the bank's alleged agreement to·apply the deposits of the millinery company as they were made to the payment of the note which it held, coupled with deposits made of sufficient amount to extinguish the note if applied to it, "under the equitable rule that between the parties what should have been done will be considered as done when necessary to protect the promisee, accomplished payment of the note before the institution of this suit." The answer alleged:

"That after the discount of the note herein sued on, which was on, to wit, the 7th day of November, 1911, the said L. Wenar Millinery Company deposited sums of money in the said Union National Bank of Dallas daily or frequently, and to the approximate extent of $4,000· per month during the months of November, December, January, February, and March next ensuing after the execution of said note, which· said deposits amounted to largely more than the principal, interest, and attorney's fees of the note herein sued on."

Deposits made pursuant to and in accordance with the said agreement alleged would· be special deposits for a particular purpose, and would not create the relation of debtor and creditor between the bank and the L. Wenar Millinery Company in the sense and· as would ordinary deposits in the usual course of business. The agreement to which the bank was a party constituted authority to the bank to apply the deposits as they were made to the liquidation of the note sued on, and no new direction by said company to the bank was necessary for that purpose.

Appellant further contends that the trial court erred in sustaining appellee's demurrer and striking out appellant's answer upon the ground that if the agreement in question was made with I. B. Walker and he was an officer of the Union National Bank, then it appears that the said Walker was adversely interested to the bank, and such contract or agreement would not be binding upon the bank, unless notice was brought to the bank through some other and proper source, and unless said contract was ratified by the bank. In this connection the proposition, in sub-. stance, is asserted that as a general rule the knowledge of an agent is the knowledge of his principal, and that it is only where such agent seeks his own personal interest or advantage in the transaction without benefit to his principal, who acts for himself personally or through another agent, that his knowledge cannot be held to be the knowledge of his principal; and, further, that a bank officer's personal adverse interest does not prevent the operation of the rule that notice to the agent is notice to his principal, when such officer is the sole representative of the bank in the transaction. That portion of the an-

swer of the defendant Goldstein which was stricken out alleges, in substance, that the Union National Bank, acting through its vice president and general manager, I. B. Walker, only, discounted the note sued on in accordance with the stated previous agreement between the millinery company, Walker, and Goldstein on the one hand, and, on the other hand, the bank, acting by Walker alone, and heretofore the question whether or not the allegations of appellant's answer disclose a transaction in which the knowledge of said Walker, as such officer, of the nature of appellant's undertaking in signing the note sued on and of the agreement to apply the deposits made by the Wenar Millinery Company to the payment of said note, as alleged in said answer, is imputable to said bank was certified to the Supreme Court for decision. In a lengthy opinion written by Mr. Justice Hawkins, the majority of the Supreme Court answered the question in the affirmative, Chief Justice Phillips dissenting. After a full discussion of the question and exhaustive citation of authorities Mr. Justice Hawkins says:

"In no practical sense, therefore, was Walker's action in agreeing on behalf of his bank to the application of such future special deposits in payment of said $5,000 note adverse to any then existing substantial interest of said bank. It follows that, under the general rules of agency, Walker's knowledge of the terms of said general agreement was imputable to and binding upon his principal, said payee bank."

In concurring in the answer that the allegations of appellant's answer disclosed a transaction in which the knowledge of Walker. as sole representative of the bank, in consummating the transaction, is imputable to the bank, Mr. Justice Greenwood said:

"The bank could not act alone through its vice president and general manager in discounting the note, in consummation of the previous agreement, and escape the consequences of the knowledge of its vice president and general manager"—citing Morris v. Georgia Loan Savings & Banking Co., 109 Ga. 12, 34 S. E. 378, 46 L. R. A. 511; Bank v. Burns, 88 Ohio, 434, 103 N. E. 93, 49 L. R. A. (N. S.) 768, and Brobston v. Penniman, 97 Ga. 528, 25 S. E. 350, as stating sound rules which should govern the determination of the question certified.

As we are bound by the holding of the Supreme Court, and should give effect to it on this appeal, it would serve no useful purpose for us to discuss and give expression to our views upon the question, and we shall therefore simply refer to the opinion of the Supreme Court found in 213 S. W. 584, for a full discussion of the question and reasons given for the decision made by that court.

[3, 4] The second assignment of error complains of the court's action in sustaining a special exception urged by the appellee to that portion of the answer of the defendant Goldstein, alleging that on August 30, 1909, and for some time prior thereto, L. Wenar Millinery Company, a corporation engaged in business in the city of Dallas, was indebted to the Union National Bank of Dallas in a sum approximating $20,000, which was the full loaning capacity of said bank to any one person, firm, or corporation; that this indebtedness was carried in said bank to the extent of $15,000 in the form of notes of the said millinery company, and a part of the indebtedness was carried in said bank as an overdraft; that the loaning power of said bank was not sufficient to enable it, without violating the law, to furnish to said millinery company all the money said company sometimes required. We think the assignment is well taken. This portion of the answer, standing alone, would not constitute a defense. "The entire matter of an overloan was one solely between the government and the bank, not affecting the validity of the loan or the ordinary contractual liabilities or obligations of the parties.". But, as urged by the appellant, the allegations in question set up proper matter of inducement leading up to the contract and agreement alleged in the answer, out of which the note sued on originated, and by which provision was made for its payment by the Wenar Millinery Company, the beneficiary thereof.

[5] The court also erred in sustaining appellee's special exception No. 5 to that part of the appellant's answer charging that after the discount of the note sued on, which was on the 7th day of November, 1911, the Wenar Millinery Company deposited sums of money in the Union National Bank daily or frequently, and to the approximate extent of $4,000 per month during the months of November, December, January, February, and March next ensuing after the execution of said note, which deposits amounted to more than the principal, interest and attorney's fees of said note. These allegations constituted a plea of payment of the note sued on, and, if true, presented a complete defense. The entire paragraph of the appellant's answer of which that portion here referred to constitutes a part is sufficient to show that the Wenar Millinery Company, soliciting accommodation makers of a demand note to be discounted for its benefit, agreed to make deposits with the payee and holder of the note, and directed that they be applied to the payment of the note. The payee, Union National Bank, agreed to receive and apply such deposits as were made to the note, but although, according to the allegations, deposits were made in sufficient amount to pay off and discharge the note, yet the payee

wrongfully applied them to the payment of another debt.

[6] Again, the court erred, we think, in sustaining appellee's exception No. 4 to that part of the answer of the defendant Goldstein wherein it is alleged that the note sued on and claimed by the intervener herein was executed by himself and his codefendant, I. B. Walker, under the agreement alleged, as another note theretofore made by them had been also executed under said agreement, which note, to wit, $2,500, had been also paid off in accordance with said agreement prior to the execution of the note in suit; that appellant received no consideration for the note, the sole consideration therefor moving to the said millinery company. These allegations were of a character to show a recognition by the parties of the existence of the contract out of which the note sued on arose, and out of which the fund for the payment of the note, consisting of deposits made in the bank, accrued, and also the parties' construction of the contract. As argued by appellant, in view of the allegation that the note sued on was an accommodation note, made under an agreement by the party to be accommodated and the makers of the note that the deposits made by the accommodated party should be applied to the payment of the note, and the further allegation that sufficient deposits to pay it had been made and had not been applied, it was proper to plead that a note, executed prior to the execution of the note sued on, under the same agreement, had been discharged by the application to it of deposits.

[7] Appellant's fifth assignment of error complains of the court's refusal to permit the defendant Goldstein to put in evidence certain testimony under his plea of failure of consideration as set forth in the fifth paragraph of the answer. In disposing of this assignment we think it sufficient to say, without detailing the testimony offered, that, in our opinion, it was insufficient to prove failure of consideration. Under the allegations of the appellant's answer, which the trial court held to be obnoxious to the special exceptions of the appellee, appellant was, we think, entitled to introduce in evidence the entries made in the bank book of the L. Wenar Millinery Company by the receiving teller of the Union National Bank, showing the amount of deposits made by said company in said bank from September 4, 1909, to April 13, 1910. This evidence was relevant on the issue raised by the appellant's plea of payment.

The other assignments of error have been disposed of by what has already been said, or point out no reversible error; but for the reasons indicated the judgment of the lower court is reversed, and the cause remanded.