## COMMERCIAL STATE BANK OF SAN AUGUSTINE v. ELLINGTON.
### (No. 1328—5436.)

Commission of Appeals of Texas, Section A.
Feb. 12, 1930.

W. T. Davis, of San Augustine, and A. D. Lipscomb, of Beaumont, for plaintiff in error.

J. R. Bogard, of San Augustine, and Davis & Davis, of Center, for defendant in error.

HARVEY, P. J. This suit was brought by the plaintiff in error, the Commercial State Bank of San Augustine, against the defendant in error, J. H. Ellington, on a promissory note executed by Ellington, as maker, and payable to the order of the Commercial State Guaranty Bank of San Augustine. The note bears date March 10, 1925, is for the principal sum of $1,800; and, according to its terms, became payable September 1, 1925. No indorsement appears on the note. The note recites that it "is secured by a pledge of securities mentioned on the reverse hereof." No securities are noted on the back of the note. The plaintiff in error acquired the note in the manner and under the circumstances hereinafter shown, and claims to be holder thereof in due course.

For some years prior to June 25, 1925, the Commercial Guaranty State Bank, which we shall designate as the old bank, was operating as a state bank in San Augustine. On the date mentioned, said bank was duly declared insolvent by the state banking commissioner, who took charge of its assets for the purpose of liquidation. Subsequently, on the same day, the banking commissioner, under proper court orders authorizing such sale, sold and delivered to the plaintiff in error (a newly organized state bank) all the assets of the old bank, except the stockholders' statutory liability. This sale was duly confirmed by the court. In the sale, as part of the consideration therefor, the plaintiff in error expressly assumed all liability to the creditors of the old bank, and expressly agreed to carry out all contracts of the old bank.

In this suit on the note, substantially the following facts were specially pleaded in defense by Ellington:

In February, 1923, and for some time prior thereto, one R. N. Stripling was indebted to the old bank, which indebtedness exceeded the limits prescribed by law. The bank held various notes and other securities, of the face value of $30,000, which Stripling had pledged to the bank as collateral security for this indebtedness. Stripling was unable to reduce the indebtedness to legal limits by payment. At the instance of Stripling and the active vice president of the bank, the latter being in charge of the bank's affairs, Ellington executed his note to the bank for the sum of $3,000 for the purpose of covering up and concealing from the state banking examiner the portion of the Stripling indebtedness which exceeded the prescribed limit. There was no consideration for this note, and same was executed by Ellington, for the purpose stated, as an accommodation to the bank and Stripling. It was agreed by all parties to the transaction that the note was not to have effect to create any liability on the part of Ellington. At the time this note was executed by Ellington, various notes and other securities held by Stripling, of the face value of $9,000, were pledged to the bank as additional security for the Stripling indebtedness to the bank. The vice president and Stripling made the further agreement with Ellington to the effect that said Ellington note would constitute a first lien on all the Stripling collateral which the bank held; and, further, that all collections on said collateral, to the extent required to satisfy said note, would be applied as credits on the note. Prior to March 10, 1925, the bank had collected on said collateral more than the amount called for by the Ellington note, but had failed to apply all said collections as credits on said note. The vice president of the bank, on or about the last-named date, represented to Ellington that all collections made on said collateral prior to that date had been applied as credits on said $3,000 note, leaving a balance due of $1,800. For this balance due, Ellington, at the instance of the vice president of the bank, executed the note here sued on. At the time this latter note was executed, Stripling still was indebted to the bank in excess of the prescribed limit, to the extent represented by the balance due on this note. And this note was executed by Ellington, for the same purpose and under similar agreement with Stripling and the vice president of the bank as in the first instance. The bank, prior to its closing, and its successor, the plaintiff in error, have collected on the said Stripling collateral more than a sufficient sum to satisfy and pay off the note sued on.

At the trial of the case in the court below, Ellington offered testimony to prove the foregoing facts pleaded by him, but, on objection from the plaintiff in error, all said testimony was excluded from evidence. The trial court rendered judgment in favor of the plaintiff in error for the amount of the note. On appeal, the Court of Civil Appeals reversed the judgment of the trial court, on account of error in excluding the above testimony, and remanded the cause. 15 S.W.(2d) 59.

By the testimony which was excluded, Ellington would have shown a valid defense against the note. According to such testimony, the note was executed in furtherance of a fraudulent scheme to conceal the excessiveness of the Stripling indebtedness. The old bank, through its agent, was a participant in the fraud. For this reason, neither the old bank nor its stockholders were

entitled to enforce payment of the note. The plaintiff in error claims to have acquired the note in due course, and insists that, because of this, the plaintiff in error took same freed of vice. The contention is overruled. The sale, under which the plaintiff in error acquired the note, was a judicial sale. For this reason, the plaintiff in error did not acquire the note in due course, as contemplated by the Negotiable Instruments Act (Rev. St. 1925, arts. 5934, 5935).

It is further contended that, because the plaintiff in error acquired the note for value and without notice of the fraudulent conspiracy out of which the note arose, the note is enforceable in its hands. This contention also is ill-founded. The stockholders in the old bank were chargeable with the effects of the fraudulent conspiracy, and were not entitled to claim an estoppel against Ellington. Under a valid contract with the banking commissioner, who in part represented the stockholders in the old bank, the plaintiff in error acquired all the assets of the bank, except the stockholders' liability, and assumed all the liabilities. In this transaction, the plaintiff in error virtually relieved the old bank's stockholders of their individual liability to creditors of the bank, and stepped into their shoes. In respect to the assets of the bank which were taken over, the position of the plaintiff in error is essentially the same as that previously occupied by said stockholders. The plaintiff in error took the note subject to all defenses which could have been urged against them.

The rejected evidence presented still another self-sufficient defense against recovery on the note: that of payment. By this evidence, Ellington proposed to prove a valid agreement, under which all the Stripling collateral should stand pledged to secure this note; and that all collections on said collateral, to the extent necessary to satisfy this note, should be applied as credits on the note. The recitals of the note were such as to put a reasonably prudent person on inquiry as to the "securities" pledged to secure payment of the note. This inquiry, if followed up, would have led to full knowledge of this agreement. The plaintiff in error was affected with notice of the agreement when it acquired the note. We know of no rule of law or of public policy which would render such an agreement invalid. Goldstein v. Bank, 109 Tex. 555, 213 S. W. 584.

We recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court and remanding the cause, be affirmed.

CURETON, C. J. The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.