# Dorman, Banking and Securities Commissioner, et al. v. Hook (two cases).

(Decided June 11, 1935.)

J. R. ESKRIDGE for appellants.

P. M. BASHAM for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

By agreement of parties these appeals have been considered together and will be disposed of in one opinion.

On January 19, 1922, Louis J. Perkins executed and delivered to the Bank of Hardinsburg & Trust Company, hereinafter called the bank, a note for $10,000 secured by a mortgage on real estate in Breckinridge county. Thereafter he executed and delivered to the bank another note for $5,000 secured by a mortgage on the same real estate. Some time in 1924 or 1925 the bank assigned and transferred the $10,000 note to T. J. Hook, who paid the principal and accrued interest therefor. In January, 1931, because of the insolvency of the bank, its directors by proper resolution closed its doors and placed its affairs in the hands of the state banking department.

On April 10, 1931, T. J. Hook instituted this action (No. 5083) against Louis J. Perkins and wife, the bank, the state banking commissioner and the deputy commissioner who had been appointed to liquidate the bank, and in his petition, after setting up the foregoing facts, alleged that prior to January 10, 1931, the bank by written indorsement assigned the note to him and that he was the holder thereof in due course and for valuable consideration, the assignment having been made before the maturity of the note; that the note was due and no part thereof had been paid except certain interest payments set forth in the petition; that, by virtue of the mortgage given to secure the payment of the note, he had a prior and superior lien upon the land described in the mortgage and petition and that there were no other liens known to him except the mortgage to secure the $5,000 note of Perkins to the bank. He prayed for judgment against the defendants for the amount of his debt, interest, and costs and that he be adjudged a prior and superior lien on the land embraced in the mortgage and for a sale of same or so

much thereof as might be necessary to satisfy his debt, interest, and costs.

By answer and cross-petition the banking commissioner and the special deputy banking commissioner set up the bank's $5,000 note and mortgage against Perkins, alleging that its lien was inferior to that of plaintiff, and they asked for judgment for the amount of their debt, interest, and costs and the enforcement of the mortgage lien.

Defendants Perkins and wife having entered no defense, judgment was entered granting to the holders of the respective notes the relief prayed for, and, at a sale made by the master commissioner pursuant to the judgment, $6,700 was realized from the real estate. The question of the assignment of the note by the bank to plaintiff was continued by agreement of parties.

On October 10 defendant bank filed a general demurrer to the petition in so far as it sought judgment against the bank, and on the same date plaintiff tendered and offered to file an amended petition which on May 28, 1932, was ordered filed. By this and subsequent amendments it was alleged by plaintiff that the note was assigned to him with recourse but that the indorsement thereon was erased by the bank, and as of date September 5, 1924, the bank placed an indorsement on the note assigning it to plaintiff without recourse, which was done without his knowledge or consent and without right, and was a fraud practiced upon him by the bank; that, after he purchased the note, it remained in the possession of the bank, and he did not learn of the attempted assignment without recourse until after the bank closed its doors; that, at the time the note was assigned to him, the bank entered into an agreement with him whereby it agreed to and did guarantee the payment of the note in full; and that but for that agreement plaintiff would not have taken the assignment of the note. He prayed for judgment against the defendants, other than Perkins, for the balance due on the note after crediting thereon the net proceeds derived from the sale of the real estate.

In addition to a general denial of the allegations of the amended pleading, defendants alleged that, if the note was assigned to plaintiff without recourse and without his knowledge and consent as alleged in his

petition, same was after the assignment open to his inspection and control, and that it was by and through his negligence and carelessness that he did not discover same; that, if he should recover the balance due on the note, loss occasioned by his acts would fall upon depositors of the bank, and they pleaded such carelessness and negligence as a bar and estoppel to his right of recovery.

Upon motion of plaintiff, the cause was transferred to the ordinary docket, and trial before a jury resulted in a verdict finding for the plaintiff, and it was adjudged that plaintiff recover of the banking commissioner in charge of the liquidation of the bank the sum of $7,677.21, the balance due on the note with interest from October 12, 1932, and defendants are appealing.

While the original note is not in the record before us, the evidence shows that an indorsement of the bank by its president on the back of the note had been canceled or blotted out by a rubber stamp, and below that appears the following assignment:

"September 5, 1924, assigned without recourse to T. J. Hook, Bank of Hardinsburg & Trust Co., by B. F. Beard, pt."

Mr. Hook introduced in evidence an instrument of writing which he testified was delivered to him at the time he purchased the note and which reads:

"September 10, 1925.

"T. J. Hook &. Sons, City.

"Gentlemen: We have today assigned you the L. J. Perkins notes with the understanding that at any time you desire we will purchase same from you at par and accrued interest, upon two weeks notice on your part that you need the money.

"[Signed] The Bank of Hardinsburg and Trust Company,

"By B. F. Beard, President."

Mr. Hook and a son who was present and advising him in the transaction testified positively that it was the understanding that the note was to be assigned with recourse, and that in addition thereto the bank would give the foregoing agreement to repurchase the

note; that the note was assigned with recourse, and that the assignment as of date September 5, 1924, as now appears thereon, was not upon the note when it was delivered to Mr. Hook; that the note was left with the bank with the understanding that it was to collect and credit the interest thereon, and it remained there until a few days before the bank closed; that they did not learn that the assignment was without recourse until it was finally taken out of the bank. It appears that Mr. Hook and two of his sons had had considerable dealings of this character with the bank, and they all testified that notes were always assigned to them with recourse, and that, in addition, the bank had always agreed to repurchase the notes. Mr. Beard, who at the time of the transaction and for a number of years prior and subsequent thereto was president of the bank, testified that the note was sold to Mr. Hook without recourse, and that the assignment appearing thereon was made at the time of the transfer to him. He was unable to state why the quoted agreement to repurchase the note was given more than a year after the date of the assignment. He testified that he always sold notes to Mr. Hook and his sons and to other persons without recourse, but admitted that it was a custom to give purchasers of notes the repurchase agreement. Mr. Hook testified that he notified the president of the bank that he needed the money and requested that the note be taken up. Mr. Beard testified that he had no recollection of a conversation at the time and place referred to by Mr. Hook, but that the latter did at one time tell him he needed or would need the money to take care of some other investments.

The first two grounds urged for reversal, namely, that the action was premature and that parol evidence concerning the assignment was inadmissible, cannot be sustained under the facts shown by the pleading, and, in the circumstances, the authorities cited as supporting these contentions have no application.

One of the grounds for new trial was that defendant had, after the trial was concluded, discovered new, important, and material evidence. It appears that, when the note was assigned to appellee, it was charged to his account at the bank. In the affidavit relating to the newly discovered evidence, it is shown that, when a question arose as to when the transfer of the note was made, the liquidating agent examined the

checking account of appellee and was unable to find where the note had been charged thereon; that, after the trial, he found it had been charged to appellee's savings account, a record with which the liquidating agent was not familiar. To entitle the parties to a new trial on the grounds of newly discovered evidence,. it must be made to appear that the alleged newly discovered evidence could not have been discovered by the exercise of reasonable diligence. Maynard v. Boram,. 180 Ky. 392, 202 S. W. 863; Quick v. Stanley, 217 Ky. 176, 289 S. W. 224; Sesmer v. Barton's Adm'x, 248 Ky. 15, 57 S. W. (2d) 1020. The liquidating agent not only had charge of all the bank's records showing both the savings and checking accounts of appellee, but also had. the benefit of the advice of the former president and other officers of the bank concerning its records, and with the use of ordinary diligence could have discovered all the facts revealed by the record concerning this transaction.

It is next argued that more than 10 years had elapsed between the date of the assignment of the note and the date when the amended petition setting up the action for fraud was filed, and therefore the action for fraud is barred by limitation. The answer to this is that there was no plea of limitation. However, it is insisted that this case comes within an exception to the general rule that limitation must be pleaded and cannot be raised by demurrer, and appellee relies on a number of cases cited in Cox v. Simmerman, 243 Ky. 474, 48 S. W. (2d) 1078, but it is unnecessary to determine whether this question of limitation might be raised by demurrer, since there was no demurrer to the amended petition.

Appellant's contention that appellee's laches and delay in discovering the alleged fraud and in asserting same worked an equitable estoppel is not well founded, since the alleged delay has in no way changed the situation of the parties nor operated to their prejudice.

Concerning the sufficiency of the evidence to support the verdict and the judgment of the court, it may be said that the evidence of appellee and his sons fully sustains the contention that it was then agreed and understood that the note was to be assigned with recourse, but, wholly apart from this, the agreement to repurchase the note was to all intents and purposes a guaranty of its payment.

In the recent case of Awotin v. Atlas Exchange National Bank, decided by the Supreme Court in April, 1935, and reported in 55 S. Ct. 674, 676, 79 L. Ed. —, the bank had sold certain bonds under an agreement to repurchase the bonds at the price paid for them plus accrued interest. While it was held that this agreement was in contravention of a federal statute, the court in discussing the effect of the agreement said:

> "Respondent, by agreeing to repurchase the bonds at the same price petitioner had paid for them, plus their accrued interest, undertook to save petitoiner harmless for all risk of loss on his purchase, as effectively as if it had indorsed the bonds without restriction or had guaranteed their payment at maturity."

Counsel's contention that appellee's claim against the bank is not entitled to preference as asserted in his pleading is apparently correct; however, that matter is not before us, since it was not determined by the court below.

Action 5097 presents the same questions of law and fact and the same grounds are relied upon for reversal; therefore what we have said applies alike in each case.

Wherefore the judgment in each case is affirmed.