**PICKETT v. TRIXLER et al.**

No. 6215.

Circuit Court of Appeals, Seventh Circuit.

Dec. 2, 1937.

U. S. Lesh and James E. Lesh, both of Indianapolis, Ind., and Eben Lesh, of Huntington, Ind., for appellant.

Donald F. Elliott, of Kokomo, Ind., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff appeals from a decree dismissing her bill seeking to enjoin the receiver of the Howard National Bank of Kokomo, Indiana, from paying to himself as receiver of the Citizens National Bank, dividends upon claims of the latter; to cancel a note for $200,000; to have an accounting for certain trust assets and, upon such accounting, to recover her pro rata share of the resulting amount as a rebate upon the assessment paid by her as a stockholder of the Howard Bank.

Plaintiff was a shareholder in the Howard National Bank. On May 31, 1930, the bank entered into a contract with the Citizens National Bank in the same city, wherein it was recited that the condition of the Howard Bank was unsatisfactory, and its capital and surplus impaired; that an assessment by the Comptroller was pending and if made would be dangerous for the bank; that the Citizens Bank had offered to assume and pay the depositors' liabilities of the Howard, in consideration of the transfer by the latter to the Citizens of certain assets and the delivery of the Howard Bank's note to the Citizens Bank, the latter to be secured by the pledge of all assets of the Howard not directly taken over by the Citizens Bank, which were to be transferred to trustees.

The Citizens assumed liabilities to depositors amounting to $1,893,067.81. The assets transferred directly to it had a face value of $1,693,067.81, and the Howard executed and delivered to the Citizens its promissory note in the principal sum of $200,000, representing the difference between the face value of the assets transferred and the amount of liabilities assumed. At the same time the Howard transferred to trustees so-called nonaccepted securities of a total face value of $379,153.63 and certain real estate. The contract provided that all securities transferred to the Citizens should be indorsed and fully guaranteed by the Howard, and that all assets delivered to the trustees should be used to their full extent and value to indemnify the Citizens against loss upon its assumption of the liabilities of the Howard and against loss upon the $200,000 note. The Citizens was given the right to substitute any of the assets it had accepted for assets held by the trustees. The "unaccepted" assets were transferred to the trustees "for the use and benefit" of the Citizens, and the trustees were to liquidate them as directed by the Citizens and pay from the proceeds (1) the cost of administration of the trust and interest on the note; (2) sums for redemption, refunding, and repurchase of the assets held by the Citizens as and when it should de-

mand; (3) the principal of the $200,000 note; and (4) the balance, if any, to the shareholders of the Howard Bank in proportion to their respective holdings.

On January 22, 1931, the Comptroller found the Howard Bank to be insolvent and appointed a receiver. Following this, on March 16, 1931, the Citizens Bank and the receiver, acting under the direction of the Comptroller, executed a contract, supplemental to that of May 31, 1930, whereby it was agreed that the assets held by the trustees should be surrendered by them to the receiver, who should administer them in accord with the National Banking Act, subject to the rights of the Citizens therein by virtue of the original agreement and that the trustees should be discharged. Thereupon the trustees delivered to the receiver all assets in their possession, exclusive of real estate, of the total face value of $367,505.75.

The Comptroller on May 27, 1931, levied and directed the receiver to collect a 100 per cent. assessment against the shareholders of the Howard on account of their statutory liability. Plaintiff paid the full amount of the assessment against her.

When the Comptroller appointed the receiver for the Howard Bank, nothing had been paid upon the $200,000 note. At that time, the assets received by it, remaining uncollected, indorsed and guaranteed by the Howard, were of the face value of $516,994.10.

On October 23, 1931, the Comptroller appointed a receiver for the Citizens Bank. The personnel of the receivers of the two institutions has changed from time to time, but on October 21, 1936, the Comptroller appointed as receiver of both banks the present defendant as successor to another previously holding both offices. On February 17, 1933, the predecessor of the present defendant, as receiver of the Citizens, filed a claim upon the note against himself as receiver of the Howard for $200,000 and another for $516,994.10, representing the amount of uncollected guaranteed securities delivered by the Howard to the Citizens under the original agreement. These two claims were allowed and dividends on each of the same in the amount of 9 per cent. have been paid. The only other claim against the Howard Bank was for $989.36, which has been allowed.

The present bill was filed in the District Court on January 26, 1935. Therein plaintiff alleged that by the execution of the supplemental contract on March 16, 1931, the Citizens and the receiver of the Howard committed a conversion of the assets in the possession of the trustees and that thereby it is estopped from asserting any claim against the Howard receivership for any sum. The assets, at the time of the alleged conversion, under the undisputed evidence, were worth $169,643.82.

The District Court found the facts to be substantially as hereinbefore set forth, concluded that there was no conversion and dismissed the bill for want of equity. Plaintiff contends that the original contract was one of sale of the assets; that the Citizens' and the receiver of the Howard had no right to execute the contract of March 16, 1931; that such action was a conversion of the assets, the measure of damages for which is $169,643.82; that there can be no legal liability of the Howard on account of the indorsement and guarantee of the uncollected assets delivered under the original agreement; that the $200,000 should not have been allowed in full, but that there should have been credited upon it, the value of the converted property $169,643.82; and that as a result of an accounting made under these contentions there is a balance to be redelivered to the several shareholders upon their assessments.

The contract of May 31, 1930, possesses some of the attributes of a sales agreement, but it is to be remembered that it was executed because the Howard Bank was in an unsatisfactory condition and feared an assessment upon its shareholders. The liabilities were assumed by the Citizens but only because, in addition to the assets received by it, it received also the note for $200,000, secured by the assets placed in trust, and the latter were in turn pledged as security not only for the deficiency of $200,000, but also for any deficiency in the accepted assets. This, obviously, was an attempted voluntary liquidation by the bank and its shareholders in order to avoid if possible actual insolvency with the resulting statutory liability.

The bank and its shareholders were charged with notice of those provisions of the National Banking Act, which place in the hands of the federal authorities complete supervision over all national banks and full control of all liquidation proceedings in case of insolvency. They knew that if insolvency should intervene, their efforts to perfect a voluntary liquidation

would fail; that an assessment would be levied to meet any deficiency in assets to satisfy the obligations, and that liabilities of the stockholders, directors, and officers under the National Banking Act could not thereby be avoided or evaded. Considering the relationship of the parties, the purpose of the contract, the obvious motives implied from the recitals, we conclude that the agreement must be treated as an attempted voluntary liquidation.

■ Nor was the supplemental agreement between the receiver of the Howard and the Citizens and the consequent surrender of the assets to the receiver of the Howard by the trustees, a conversion of the property. The Comptroller, in pursuance of a statute which makes his judgment final, subject to review only in direct attack thereon, found the bank to be insolvent and appointed a receiver. It became the receiver's duty to liquidate the assets and satisfy the liabilities of the bank, in so far as possible. For all the creditors previously existing there came into existence one creditor, namely, the Citizens Bank, which became a creditor to the extent of the liability upon the guarantee of uncollected assets held by it and the $200,000 note representing the deficiency in assets.

■ As stated in Norman v. B. & O. R. Co., 294 U.S. 240, at page 303, 55 S.Ct. 407, 414, 79 L.Ed. 885, 95 A.L.R. 1352: "The broad and comprehensive national authority over the subjects of revenue, finance, and currency is derived from the aggregate of the powers granted to the Congress, embracing the powers to lay and collect taxes, to borrow money, to regulate commerce with foreign nations and among the several states, to coin money, regulate the value thereof, and of foreign coin, and fix the standards of weights and measures, and the added express power 'to make all laws which shall be necessary and proper for carrying into execution' the other enumerated powers." Under this authority Congress has enacted the national banking laws. Const. art. 1, § 8; 12 U.S.C. A. § 1 et seq. It has created a system whereby the Comptroller takes charge and settles the affairs of insolvent national banks. The receiver, under the direction of the Comptroller, collects all debts and, with the approval of the court, sells or compounds bad or doubtful debts and sells real and personal property; claims are filed, dividends are declared. Over this administration the Comptroller has complete authority. After the debts have been paid, if there are any assets remaining, provision is made for the appointment of a shareholder's agent who shall receive the same and reduce them to money and distribute it amongst the shareholders. Thus the act empowers and directs the receiver, acting under the Comptroller, subject in certain instances to the approval of a court of competent jurisdiction, to administer assets as fully and as completely as the trustees were to do under the trust agreement. The obligation of the receiver was not different from theirs. It became his duty to reduce the assets to money, and, first, to satisfy therefrom, the creditors, and, second, to distribute the balance if any to the shareholders or their agent. It was not contemplated by the Congress that the National Banking Act, providing this comprehensive system of liquidation and settlement of affairs of insolvent national banks, should be impeded or hindered by private agreements; all private contracts at odds therewith must give way thereto.

As was said in Norman v. B. & O. R. Co., supra, parties cannot remove their transactions from the reach of dominant constitutional power by making contracts concerning them; they cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but when dealing with a subject-matter which lies within the control of the Congress, "they have a congenital infirmity." The Supreme Court pointed out familiar applications of this rule, such as contracts fixing rates other than those fixed by the Interstate Commerce Commission, even though executed prior to the creation of that body, private contracts made prior to the enactment of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq., which by their terms made same ineffective, and contracts for free passes given by interstate carriers in consideration of releases of claims for damages prior to the enactment of the law forbidding the same. The court announced that there is no constitutional ground for denying to the Congress the power expressly to prohibit and invalidate contracts, even though previously made and valid when made, when they interfere with the carrying out a policy it is free to adopt. This reasoning was applied to the constitutional authority of the Congress to regulate the currency and to establish and control the monetary system of the country and it must apply with equal force to its authority over national banks.

182

■ Consequently the making of the supplemental contract and the delivery of the assets to the receiver were not in violation of any of the parties' rights, but in compliance with the provisions and intent of the National Banking Act which prescribes that the administration of insolvent national banks shall be under the jurisdiction of the Comptroller. Nor were the parties injured thereby, for the duty of the receiver to liquidate the assets and account for the proceeds was the same as that of the trustees and the parties stand in the same position they occupied prior to the execution of the supplemental agreement. That agreement has worked no disadvantage to plaintiff, but has placed the administration of assets in the hands of the officer designated by law to accomplish the purpose of the original agreement.

This does not mean that in the course of the administration plaintiff is not at liberty to invoke the jurisdiction of a court of competent jurisdiction against any tort of the receiver or his superior officer, the Comptroller; but with such a situation, we are not here concerned.

■ It is said that the Howard Bank had no authority to guarantee or secure by indorsement the assets delivered by it to the Citizens. With this position we are not in accord. True, as pointed out in Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393, and again recently by this court in Kimen v. Atlas Exchange Nat. Bank of Chicago, Awotin v. Daniel M. Healy et al., 7 Cir., 92 F.2d 615, national banks, in dealing in securities, may not agree to repurchase or guarantee the same, but this principle has no application to a delivery of assets under the circumstances presented here. Banks may, under the federal statutes, attempt voluntary liquidation. They may make all proper agreements with respect thereto, incidental to the accomplishment of the purpose. In doing so, they are not dealing in securities, but are attempting to accomplish a winding up of their affairs. This the Howard Bank attempted to do, and, to effectuate its purpose, delivered certain assets. The Citizens received these, but, being uncertain as to how much could be collected or as to whether they would be sufficient to discharge liabilities assumed, demanded guaranty and pledge of the other assets to secure the guaranty. This was a proper exercise of the bank's authority upon attempted voluntary liquidation.

■ Complaint is made of the fact that defendant is receiver of both institutions and that the same counsel represents him in each capacity. We must confess that we do not look with equanimity upon a practice which permits counsel to represent two parties in adverse relationship and if injury had resulted we would not hesitate to recognize the error and reverse the judgment. But the adverse position of the parties here is well protected by counsel for plaintiff as against counsel for defendants. Thus far no injury has accrued to plaintiff, and the error of the court, if any, in refusing to require separate counsel was not prejudicial. What may develop in this respect hereafter is for the future.

We find no error in the record and the decree is affirmed.