## TITTLE v. STATE NAT. BANK OF MARSHALL.

### No. 6090.

Court of Civil Appeals of Texas. Texarkana.

March 23, 1944.

Rehearing Denied April 20, 1944.

Cary M. Abney and Sam B. Hall, both of Marshall, for appellant.

Jones & Jones, of Marshall, for appellee.

HARVEY, Justice.

Judgment was rendered in favor of the State National Bank of Marshall, a national bank in voluntary liquidation, plaintiff appellee, against W. D. Tittle, defendant (appellant), upon a note in the principal sum of $2,000, plus attorney's fees and interest. Upon a verdict returned by a jury, and after motions filed by the respective parties to the suit, the court entered the judgment from which the defendant appeals.

The documentary evidence shows that on December 31, 1941, appellant executed a promissory note to appellee in the sum of $3,000, payable thirty days after date. The sum of $3,000 was placed in the deposit account of appellant with appellee bank, and a check of even date for such amount was signed and delivered to W. M. Thomas, payee. It was testified that W. M. Thomas executed and delivered a note in like amount of $3,000 to W. D. Tittle, which note at the time of the trial had been lost or destroyed. On April 9, 1942, appellant executed and delivered a renewal of the first note in the sum of $3,000 to appellee, and on July 17, 1942, another renewal note in the sum of $2,000 was made and delivered by appellant to appellee, a credit of $1,000 having been made on the principal sum set out in the note dated April 9, 1942, upon which last note suit was filed. On this latter date appellant accepted a note payable to him in the sum of $2,000, and signed by W. M. Thomas.

The defendant in his answer set up several defenses, alleging in substance that at the time the first note was executed by him, the Waterman Brick & Tile Company, Inc., owed plaintiff an overdraft,

which in connection with other indebtedness due by it to the plaintiff exceeded the amount that plaintiff could lend legally to one customer; that W. M. Thomas, cashier and chief executive officer of plaintiff, and financial manager of the Waterman Brick & Tile Company, acting as the sole representative of the plaintiff and of the Brick Company, agreed with defendant at the time of the making of said note that the proceeds thereof would be used to liquidate the overdraft of the Brick Company, and that a large sum of money then due the Brick Company under a contract made by the Brick Company for its products used in the construction of the Lone Star Ordnance Plant, and later received by the plaintiff bank, would be applied to the payment of the note; that such agreement created a trust in defendant's favor and operated as an assignment of a sufficient amount of such fund to liquidate the note; that the receipt of the fund by the bank operated as a full payment of the original note, and therefore he was relieved of liability on the note sued upon. In addition, the defendant pleaded fraud in the inducement of all the notes, a lack of consideration, and that he was an accommodation maker for the bank.

By supplemental petition the plaintiff excepted to the allegations contained in the answer, for the reasons, among others, that the alleged agreement constituted a scheme to violate the National Banking Laws and that the defendant, being a party to the scheme, could not avoid liability on the note by claiming the benefit of such agreement; that parol evidence was not admissible to vary the terms of the written instrument; that Thomas did not act for the plaintiff bank in the transactions alleged to have taken place, and that in no event was he authorized to bind the bank by an agreement of the kind relied upon by the defendant.

In answer to the issues submitted to them, the jury found in substance that W. M. Thomas agreed with W. D. Tittle at the time the original note for $3,000 was executed by Tittle that such note would be paid out of the funds received by Waterman Brick & Tile Company, Inc., under its contract to furnish materials for the Lone Star Ordnance Plant; that such agreement was not the sole consideration for the execution of such note by Tittle, and that Tittle was not induced by the agreement to execute the note; that at the time Thomas made the agreement with Tittle, he did not intend to perform the agreement. Further, that Tittle, believing fraudulent statements made by Thomas, was induced thereby to execute the second and third notes hereinabove mentioned; that Thomas said he would apply the proceeds of the first note on the overdraft of Waterman Brick & Tile Company, and that Tittle believed such statement. The jury also found that Tittle borrowed the $3,000 and gave his note therefor solely for the purpose of lending the money to Thomas, and that the second and third notes, renewals, were executed solely for the accommodation of Thomas.

The facts show without dispute that the Waterman Brick & Tile Company, Inc., at the time of the alleged agreement between Thomas and Tittle, had loans and overdrafts due to the plaintiff bank aggregating a sum in excess of the limit that the bank legally could permit. Thomas testified that the money realized on the original note of Tittle for $3,000 went into the Brick Company's account, and that he was the only one connected with the bank who had anything to do with the taking of the Tittle notes and with the transactions in connection therewith. Officials of the bank testified that it was the duty of Thomas to see that the overdraft of the Brick Company was taken care of, and that the bank directors looked to him to see that it was done; that the defendant, Tittle, had a line of credit with the bank at the time his first note for $3,000 was taken, and that the loan was made on such line of credit without any one other than Thomas being consulted in connection therewith. With reference to whom Thomas represented in the transaction, both the plaintiff and the defendant pleaded, among other things, that he acted for the Brick Company.

■ Under the facts enumerated, we are of the opinion that the plaintiff bank was bound by the knowledge of its representative, Thomas, in the taking of the note of Tittle for $3,000 on December 31, 1941; that the agreement found by the jury to have been made, in answer to issue No. 1, that the note would be paid from funds due the Brick Company under its contract with the Lone Star Ordnance Plant, operated as an assignment of such funds, and created a trust therein, for the payment of

the note, and upon the bank subsequently receiving a sum from such source sufficient for that purpose, using the money to apply on indebtedness due the bank by the Brick Company instead of in payment of the note in question, the note was extinguished.

In this connection we quote from the case of Goldstein v. Union National Bank, Tex.Civ.App., 216 S.W. 409, 413: "The court also erred in sustaining appellee's special exception No. 5 to that part of the appellant's answer charging that after the discount of the note sued on, which was on the 7th day of November, 1911, the Wenar Millinery Company deposited sums of money in the Union National Bank daily or frequently, and to the approximate extent of $4,000 per month during the months of November, December, January, February, and March next ensuing after the execution of said note, which deposits amounted to more than the principal, interest and attorney's fees of said note. These allegations constituted a plea of payment of the note sued on, and, if true, presented a complete defense. The entire paragraph of the appellant's answer of which that portion here referred to constitutes a part is sufficient to show that the Wenar Millinery Company, soliciting accommodation makers of a demand note to be discounted for its benefit, agreed to, make deposits with the payee and holder of the note, and directed that they be applied to the payment of the note. The payee, Union National Bank, agreed to receive and apply such deposits as were made to the note, but although, according to the allegations, deposits were made in sufficient amount to pay off and discharge the note, yet the payee wrongfully applied them to the payment of another debt."

■ We are of the opinion that the trial court did not err in admitting testimony with reference to the alleged agreement between Thomas and Tittle at the time of the taking of the first note for $3,000. This testimony does not violate the parol evidence rule, in that it was offered for the purpose of showing payment, and upon the issue of fraud.

In the case of Ellington v. Commercial State Bank, Tex.Civ.App., 15 S.W.2d 59, 61, (involving an agreement by the vice-president of a bank that defendant's accommodation note was to be secured by collateral deposited by bank's debtor to secure the indebtedness), the court uses the following language: "The note sued upon would have been subject to the defense pleaded by appellant, and the excluded evidence would have been admissible, had the suit been instituted by the original payee. The testimony offered, except on the issue that appellant was in no event to be held liable on the note, did not vary its terms; that it was secured by the collateral and to be paid from the proceeds thereof; that it had been so paid, and that the value of the collateral was more than the amount of the note; that appellant was an accommodation maker of the note were issues collateral to the execution of the note, and in no sense varied or contradicted its terms."

The Commission of Appeals, Supreme Court, in disposing of the same case on appeal, 24 S.W.2d 359, 361, with reference to the admissibility of evidence relating to the collateral agreement, said: "The rejected evidence presented still another self-sufficient defense against recovery on the note: that of payment. By this evidence, Ellington proposed to prove a valid agreement, under which all the Stripling collateral should stand pledged to secure this note; and that all collections on said collateral, to the extent necessary to satisfy this note, should be applied as credits on the note. The recitals of the note were such as to put a reasonably prudent person on inquiry as to the 'securities' pledged to secure payment of the note. This inquiry, if followed up, would have led to full knowledge of this agreement. The plaintiff in error was affected with notice of the agreement when it acquired the note. We know of no rule of law or of public policy which would render such an agreement invalid. Goldstein v. [Union Nat.] Bank, 109 Tex. 555, 213 S.W 584."

■ One who violates the provisions of the National Banking Laws will not be heard to urge an unlawful agreement or transaction in avoidance of his liability to a bank under such illegal transaction. In the case of Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 482, 84 L.Ed. 694 (unlawful purchase of its own stock by a bank), the court uses this language:

"The obvious purpose of prohibiting the purchase by a bank of its own stock is to prevent the impairment of its capital resources and the consequent injury to its creditors in the event of insolvency. The provisions of the Act requiring periodic examinations and reports and the powers

of the Comptroller are designed to insure prompt discovery of violations of the Act and in that event prompt remedial action by the Comptroller. These purposes would be defeated and the command of the statute nullified if a director or officer or any other by his connivance could place in the bank's portfolio his obligation good on its face, as a substitute for its stock illegally acquired, and if he remained free to set up that the obligation was, in effect, fictitious, intended only to aid in the accomplishment of the injury at which the statute is aimed.

"Here, respondent, with full knowledge of the unlawful purpose to conceal the presence of the stock among the bank's assets, gave in exchange for it, first another's note and then his own, knowing that it was to be availed of as an apparently valid and lawful asset so as to forestall the remedies available under the statute for the unlawful purpose. * * * If respondent were free to set up the unlawful agreement as a defense and thus cast the loss from the unlawful stock purchase on the creditors of the bank in receivership, he would be enabled to defeat the purpose of the statute by taking advantage of an agreement which it condemns as unlawful."

The same principle is announced in the cases of D'Oench, D. & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956; Federal Deposit Ins. Corp. v. Vest, 6 Cir., 122 F.2d 765; Awotin v. Atlas Exchange National Bank of Chicago, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393.

■ An analysis of the facts of the instant case, however, brings us to the conclusion that it does not come within the rule enunciated in the foregoing decisions. Tittle stated that he knew he was liable on his note, and his position is not that the agreement nullified the note, but that by reason of the agreement and the subsequent receipt of the funds in question by the plaintiff bank, the note was paid, relieving him of liability thereon. In this connection, reference is made to the jury finding that Thomas represented he would apply the proceeds of the first note on the overdraft of the Waterman Brick & Tile Co., Inc., and that Tittle believed such representations. Thomas, the executive officer of plaintiff, in consummating the deal in question, was not, ipso facto, violating federal law or policy; whatever improper acts in the situation due to the excess loans permitted by the bank in favor of the

Brick Company and the overdrafts by the Brick Company, existed at the time of the transaction. It was his duty to remedy the condition existing with reference to the overdrafts and excess loans of the Brick Company. If the facts presented a case in which the note sued upon was given for the purpose of falsely bolstering the assets of the bank, with an agreement that the maker was not to be held liable on it, it would be a situation distinctly different from the one under consideration. In the instant case, the transaction operated as a benefit to the bank rather than a fraud upon it. Appellee's counter point with respect to the illegality of the agreement in question is overruled.

■ It is contended that the answers of the jury to issues Nos. 1, 11 and 12, to the effect that the agreement as testified to by the defendant, Tittle, was made, and that Thomas at the time represented, and the defendant believed the representation, that the proceeds of the note executed by the defendant to plaintiff would be applied on the overdraft of the Brick Company, are in conflict with the answers to issues Nos. 14 and 15, which are in substance that on December 31, 1941, Tittle, the defendant, borrowed $3,000 from the plaintiff bank, and gave his note therefor to the bank, for the sole purpose of borrowing the money and lending it to Thomas. If the agreement entered into between Thomas and Tittle that the note of Tittle, executed on December 31, 1941, in favor of the bank, would be paid out of funds due the Brick Company under its government contract, operated as an assignment of a sufficient amount of such funds to pay the note, and created a trust therein, as we have concluded, then the motive of Tittle in executing the note becomes immaterial, as well as any representations by Thomas as to what would be done with the proceeds of the Tittle note. Any seeming conflict in such findings would not change the effect of the original agreement, as found by the jury to have been made. Also, any conflicts in the answers to issues Nos. 16 and 17, to the effect that the note sued upon, which was the second renewal of the original note, was executed solely for the accommodation of Thomas, and the answers to issues Nos. 8, 9, and 10, relating to the defense of fraud, in substance that the defendant was induced to execute such last note by the false representation of Thomas that only $1,000 had been re-

ceived by the Brick Company under its contract to furnish brick and tile for the *construction of the Lone Star Ordnance Plant*, which representation the defendant believed, likewise are rendered immaterial.

For the reasons discussed, the judgment of the trial court is reversed and judgment here rendered in favor of the appellant.